## STATE v. NORTON.

1. HOMICIDE—CONSPIRACY.—There is evidence in this case tending to show that one of the defendants shot deceased, and that there was a conspiracy between them to do an unlawful act.

2. PLEADINGS—INDICTMENT.—THE COUNT in an indictment charging murder is separate and distinct from the count charging carrying concealed weapons, and the solicitor may *nol. pros.* the latter without affecting the former.

3. JUDGMENT—IRREGULARITY.—Having the stenographer in a criminal case to read to the jury at its request the testimony of a witness, is an irregularity in procedure, and defendant cannot except thereto on appeal without objecting at trial.

Before DANTZLER, J., Greenville, September, 1903. Affirmed.

Indictment against Sol Norton, Poinsett Gosnell *et al.* From sentence by Sessions Court, defendants, Norton and Poinsett, appeal.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *Judgment should have been arrested because indictment did not contain count against carrying concealed weapons at time of conviction:* 68 S. C., 318; Cr. Code, 57, 131; 14 S. C., 350; 10 S. C., 191; Clark. Cr. L., 104; 10 Ency. P. & P., 563; 1 Bish. Cr. Proc., sec. 113. *Error to direct stenographer to read testimony of witness to jury:* Con. 1895, art. I., sec. 26; 47 S. C., 488; 5 L. R. A., 854; 35 S. C., 549; 24

Wend., 185; Cro. Eliz., 189; Buller (N. P. ed., 1806), 308; 10 Johns., 239; 13 John., 487.

*Mr. W. H. Townsend, Assistant Attorney General,* contra, cites: *Count was not for carrying concealed weapon, but one of unlawful length and weight, and properly nol prossed:* 68 S. C., 318; 45 S. C., 483. *Failure to object to reading of stenographer's notes is waiver of objection thereto:* 1 S. C., 243; 9 Rich., 480; 6 S. C., 177, 344; 55 S. C., 90; 22 W.Va., 44; 70 Wis., 462; 79 N. W., 337; 13 S. C., 461; 26 S. C., 128; 1 N. Y. L. R., 157; 48 N. E., 238; 36 Ga., 345; 34 Conn., 294; 13 Conn., 459; 15 Nev., 163; 139 Mass., 43; 43 Ga., 483; 62 Mo., 96; 45 Pac., 118; 67 N. W., 1094.

July 23, 1904. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appellants, Sol Norton and Poinsett Gosnell, with Will Norton, William Gosnell, Rufus Staton and Amer Gosnell, were jointly indicted for the murder of Ollin Gosnell. The indictment contained two counts, one for murder and another for carrying concealed weapons. The defendants entered a plea of not guilty to said indictment.

At the close of the testimony, the solicitor announced that he would withdraw the count for carrying concealed weapons, and thereupon drew a circumflex around the said count and wrote upon the margin of the indictment opposite the words *"nol pros."* The jury rendered a verdict finding Sol Norton, Poinsett Gosnell and Will Norton guilty of murder, with recommendation to mercy, and finding the others not guilty.

Sol Norton, Poinsett Gosnell and Will Norton then made motions for a new trial and in arrest of judgment, upon the following grounds: 1. The evidence was insufficient to convict. 2. That the indictment did not contain a count for carrying concealed weapons, and the jury was not required to pass upon the issue as provided in the Criminal Code. 3.

That it was error to direct the stenographer, at the request of the jury, to read the testimony of Annie Gosnell, the jury being the only arbiters of what a witness has testified and the truth of the issues of fact.

His Honor, the presiding Judge, sustained the motion for a new trial as to Will Norton upon the first ground stated, and overruled it as to the appellants, whom he sentenced to life imprisonment. After the jury had retired for some time, they returned into the Court room and requested the presiding Judge to have the testimony of Annie Gosnell, a witness for the State, read over to them; whereupon the Circuit Judge directed the stenographer to read his notes of testimony to the jury, which he did. Counsel for appellants were present and interposed no objections, but did not consent thereto. The appellants assign the following errors:

"I. Error in refusing motion for new trial, upon the grounds that there is absolutely no evidence in the case tending to prove that either of the defendants slew the deceased, or that they were involved in a conspiracy with the person who did slay him to commit any unlawful act, or were present aiding and abetting such person to slay.

"II. Error in refusing motion in arrest of judgment on the ground that the count in the indictment charging the defendants with carrying concealed weapons was withdrawn and *nol prossed* by the solicitor after the jury had been empanelled, after the testimony was all in, and before the case was submitted to the jury; the law requiring that when one is charged with murder or other offenses, when violence is inflicted on the person with a deadly weapon of the kind the carrying of which is prohibited, there shall be a count in the indictment charging the accused with the offense of carrying such a deadly weapon in violation of law, and it appearing in this case that the alleged offense was committed with a pistol.

"III. Error in not granting the motion for a new trial and in arrest of judgment, upon the ground that it was error to direct the stenographer, at the request of the jury, to read

to them the notes of the testimony of Annie Gosnell, the jury being the only arbiters of what a witness has testified and of the truth of the issues of fact.

"IV. From the verdict, judgment and sentence upon the ground that it was error to direct the stenographer, at the request of the jury, to read to them his notes of the testimony of Annie Gosnell, the jury being the only arbiters of what a witness has testified and of the truth of the issues of fact.

"V. That it was a violation of article V., section 26, to direct the stenographer to read his notes of the testimony of Annie Gosnell to the jury, they being the sole constitutional arbiters of what a witness has testified."

We will first consider the exception numbered 1. Annie Gosnell testified as follows: "Where were you the day your father was shot? I was in the field with him. Please tell the Court and the jury who shot him? Will Norton and Sol Norton, and Will—I think it was Will—I know it was Sol, and one of them, shot him. What did they shoot him with? With a pistol. Now, you say who all were in the party that you are certain about? Poinsett Gosnell, Sol Norton and Will Norton, and another one I didn't know. How many were there? Four. What did they say to him? They never spoke. What did he say to them? He throwed up his hands and hollered, 'Heigh! Heigh.' That is all he said. How near were they to him? They were pretty close to him. Were they standing on the hill above him or below him? Above him. Which way did they go off? They went around the hill. Did they walk or run? They run."

Wylie Gosnell testified as follows: "Where were you the day your father was shot? In the field. Who was there beside you? Annie. Who else? Johnnie. Just the three of you? Yes, sir. How many men came to the field? Four. Who were they? Sol and Poinsett. Did you know the other two? No, sir. What did the men say to your father before they shot him? Nothing. They never said

anything to him? No, sir. What did your father say? Nothing but throwed up his hands and said 'Heigh!' " This testimony, without referring to that of other witnesses, is sufficient to show that the exception cannot be sustained.

The second exception will next be considered. Section 60 of the Criminal Code is as follows: "Every indictment for murder shall be deemed and adjudged sufficient and good in law, which, in addition to setting forth the time and place, together with a plain statement divested of all useless phraseology of the manner in which the death of the deceased was caused, charges that the defendant did feloniously, wilfully and of his malice aforethought, kill and murder the deceased."

Section 131 of the Criminal Code provides that "in every indictment for murder, manslaughter, assault and battery of a high and aggravated nature, assault, and assault and battery with intent to kill, and in every case where the crime is charged to have been committed with a deadly weapon of the character specified in section 130, there shall be a special count in said indictment for carrying concealed weapons, and the jury shall be required to find a verdict on such special count."

Each count in an indictment is considered, to all intents and purposes, a separate indictment. 10 Enc. Pl. & Pr., 540. The indictment was drawn in compliance with the requirements of the statute. The counts in the indictment in no wise were dependent upon each other. They charged distinct offenses, and when the solicitor was satisfied that one of the counts was not sustained by the testimony, he had the right to enter a *nol pros.* as to that count. His action, instead of being prejudicial, was advantageous to the appellants, and we fail to see wherein they have any just ground of complaint. These views are in harmony with the recent decision in the case of *State* v. *Edwards,* 68 S. C., 318, 47 S. E. R., 395.

The third, fourth and fifth exceptions will be considered together. The error assigned in these exceptions related to

the procedure, and was a mere irregularity. The Court, in *Bordeaux ads. Treasurers,* 3 McC., 142, says: "In 3 Tidd's Practice, 434, it is said, an irregularity may be defined to be the want of adherence to some prescribed rule or mode of proceeding; and consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or in doing it in an unreasonable time or improper manner." This definition is practically adopted in 17 Enc. of Law, 481. In a note to page 482 of the last mentioned volume, the distinction between illegality and irregularity is thus pointed out: "Irregularity is to be distinguished from illegality, which is predicable of radical defects only, and signifies that which is contrary to the principles of the law as distinguished from mere rules of procedure. It denotes a complete defect in the proceedings. That which is illegal or *ultra vires* renders the proceedings void, an irregularity renders them voidable only."

In *Cosgrove* v. *Butler,* 1 S. C., 241, the Court uses this language: "Whether in a given case the existence of irregularity vitiates a judgment, must depend upon the character of the irregularity and the circumstances under which it occurred. It is not necessarily the duty of the Court during the progress of a cause to take note of departure from the regularity of procedure. If such departure be not excepted to, the Court may consider objection to them as waived. And it may be asserted, as a general rule, that where there is no want of jurisdiction and the parties are properly before the Court, its judgment will be binding, even although affected by irregularity which would have defeated the proceedings if objection had been timely and properly made."

In the case of *Hammarskold* v. *Bull,* 9 Rich.. 474, it is said that "all objections for mere irregularity are so readily waived and remedied, that the general rule in respect to them is that they must be made at the earliest opportunity, or, as it has been expressed in the first instance, else they will not avail. A different rule, however, prevails as to substantial defects, which make the proceedings null and void."

.The following language is taken from the case of *Smith & Melton* v. *Walker,* 6 S. C., 169 : "A party desiring to have an irregularity corrected must proceed at the first opportunity, or offer a reasonable excuse for not having, done so."

. The rule is thus stated in *Grottkau* v. *State,* 70 Wis., 462 : "In the trial of causes as well as other matters conducted by human agencies, there will unavoidably be more or less inadvertence, irregularity, mistake, improdpriety and error. As often reiterated, the administration of the law is not an exact science, and yet it aims at substantial justice and generally secures it. By reason of these things, parties and their counsel, in criminal as well as civil cases, are required to bring any supposed impropriety or error to the attention of the Court, and obtain a ruling or action thereon at the earliest opportunity, in order to become available. Even then the party feeling aggrieved must promptly take and preserve in the record his exceptions or the supposed error will be deemed waived. This has been the uniform ruling of this Court even in cases of murder."

The reason of the rule is stated as follows, in the case of *Lee* v. *McLeod,* 15 Nev., 163 : "A party ought not to be permitted to take the chances of a verdict in his favor.and wait until after the verdict is rendered against him before making any objection. If, with a full knowledge of all the facts, he .proceeds with the trial and takes the chances, he ought in justice and in fair dealing to submit to the consequences."

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.