## Pennsylvania Company v. Benjamin J. Barton.

### Gen. No. 12,794.

1. WITNESS—*how impeaching questions may be put to.* The attention of the witnesses may be directly and specifically called to the particular statement or statements by which the impeachment is sought to be accomplished.

2. WITNESS—*instruction as to interest of plaintiff held not improperly refused.* *Held,* not erroneous to refuse to instruct the jury that they had a right to take into consideration in passing upon the testimony "the fact that the plaintiff has an interest in the result of the trial and a right to give to his testimony only such weight as they might think it was entitled to under the evidence."

3. VERDICT—*when not excessive.* A verdict for $30,000 is held not excessive where it appeared that the plaintiff at the time of his injury was a student of engineering, was seriously and permanently injured, had incurred liability for medical services of several thousand dollars, and would, if life continued, require daily and constant aid in the performance of functions indispensable to existence.

4. TRIAL—*effect of absence of judge during conclusion of.* The trial judge cannot absent himself during the trial of a cause, and cannot, even by consent, delegate his authority to preside over a trial, control the arguments, read the instructions, etc., but where such a course is taken by the judge with the consent of the parties to the cause, a reversal will not follow where no objection or exception was interposed and no mention made of such course of procedure as a ground for a new trial until after the original written motion for a new trial had been filed and argued.

Action on the case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed December 28, 1906.

**Statement by the Court.** This is an appeal from a judgment in favor of appellee, rendered in an action to recover for personal injuries, caused it is alleged by the negligence of appellant.

According to the testimony of appellee he was at the time of the accident a draughtsman in the employ of the American Bridge Company at Chicago, working in the office of the resident engineer of that company and studying civil engineering. He had been partially educated abroad. The evening of the accident he went to the theatre with a young woman, afterward took her to the Edelweis restaurant, where they had supper, with a bottle of beer for each. He then accompanied her to Halsted street between Thirty-second and Thirty-third streets near where she resided. Seeing

a street car coming north he started to take it, but it did not stop and he missed it. It being then very late at night he states he decided to go to Wentworth avenue,where he says he was more familiar and knew that the cars ran every twenty minutes; that he walked down Thirty-second street eastward toward Wentworth until he reached appellant's railroad tracks, which he crossed in safety, that the gates were standing up and he heard no noise; that it was "pretty dark there;" that he was somewhat afraid of meeting footpads and was looking around, when he reached the further side of the tracks and past the further or westerly of the gates and beyond the fence which enclosed the tracks he had passed; that proceeding on his way he came to another track outside of and beyond the eastern gate,which track he supposed to be a street car track, but which was in fact a "team track," that is a track upon which appellant switched cars to be unloaded by teams. He states the team track was about twenty-five or thirty feet outside of the east gate, that he saw no light nor lantern at or near the place except the green lamps on the ends of the gate standing up in the air, in which position they remained;that there was nothing to prevent his seeing a conspicuous light on the end of any approaching car; that he saw nothing of the kind, nor any flagman or other person, but that there was some distance away an electric street light flashing intermittently. He states that when he first approached the tracks and was about two blocks away he saw a freight train moving north apparently on the east side of the railway right of way; that after passing the other tracks, and when he had just reached the team track he was hit on his left side and knocked down; that he grabbed and got hold of something that was down near the wheels and held on; that he was dragged a considerable distance; that then his legs were run over and some object struck his head, that he tried to save his head by throwing up his arms and as

he did so his arms were run over and he became unconscious.

There is testimony introduced in behalf of appellant, which it is claimed tends to show that the team track was full of cars at the time of the accident; that appellee could not therefore have been struck, as he claims to have been, on the crossing by a car silently rolling down upon him, which had been shoved or "kicked" on to the team track; that the place where he was picked up after the accident was so far from Thirty-second street as to indicate that appellee had gone there and crawled under a car, and that he used profane language when picked up and expressions indicating intoxication.

Appellee's injuries are serious and not disputed. the left foot is gone from the ankle across the instep, the right leg from between the knee and the ankle, the left arm from just below the elbow, and on the right hand the thumb is contracted and the other fingers either amputated in whole or part and what is left of them badly crippled. He was operated upon at three different times and an end was grafted on to the terminal joint of the ring finger of the right hand.

At the conclusion of the evidence, the abstract contains the following recital:

"Thereupon, on Friday, June 30, A. D. 1905, beginning at the hour of about 2:45 P. M. of said day, the following proceedings were then and there had and taken in said cause, viz.:

'The Court. How long do you want to argue this case?

Mr. Darrow. We want to take all the time we want.

The Court. I want to go at 4:20.

Mr. Darrow. I don't think in a case of this kind the argument ought to be limited.

The Court. I will limit the argument to forty-five minutes on each side. Mr. Pierce. Very well, your Honor.'

"Thereupon Attorney Bentley opened the argument

on behalf of the plaintiff, occupying about twenty (20) minutes in so doing. Thereupon Mr. Pierce, on behalf of the defendant, addressed the jury, occupying about twenty (20) minutes in so doing.

"Thereupon Mr. Waterman addressed the jury also on behalf of the defendants, occupying about twenty-five (25) minutes in so doing.

"Thereupon Attorney Darrow, for the plaintiff, began his address to the jury and before the conclusion thereof Mr. Pierce spoke privately to said Attorney Darrow, saying that he, said Darrow, had already exceeded the limit of his time for argument. Whereupon said Darrow, who had exceeded his time, at once ceased his argument to the jury.

"During the argument of Mr. Darrow, his Honor, Judge Wright, left the court room, going therefrom by an open passageway leading from the rear of his desk to his chamber.

"Whereupon the clerk of said court, then and there in the absence of his Honor, Judge Robert W. Wright, and in the absence of any judge, read aloud in the hearing of the jury the following and each of the following documents, the same being the court's instructions to the jury, viz.: * * *

"The court further certifies that being desirous of taking a train at 4:46 in the afternoon for his home in Belvidere, Illinois, the court before the argument called to the bar counsel for the plaintiff and counsel for the defendant, and asked said respective counsel if they would agree that the instructions aforesaid, so marked 'given' by the court, might be read to the jury by the clerk of the court and in the absence of the court, and if said respective counsel would agree that the arguments might be concluded and the jury retire in the absence of the court, and that the jury might return a sealed verdict and separate, and that said verdict might be received next morning by some other judge on said morning.

"And the court certifies that the counsel for the plaintiff and the counsel for the defendant agreed to the foregoing request made by the trial court, and agreed and said that said instructions might be read

by the clerk, as aforesaid; that the said arguments might be concluded and the jury retire in the absence of the trial judge, and that said jury return a sealed verdict and separate, and that the same might be received the next morning by some other judge; that said agreement was made by counsel for the purpose of accommodating the trial court in order that he might leave upon said train to attend to a set matter in his own county on the following morning.

"No objection was made to said proceedings at the time and the first notice thereof by way of any objection to said procedure on the part of said defendant was made upon the filing of the supplemental ground for a new trial herein, July 25, A. D. 1905.

"His Honor, Judge Robert W. Wright, after leaving the court room as aforesaid did not return thereto nor did any judge take his place or sit or act as judge therein before the jury retired to consider of their verdict; and thereupon the jury, in the absence of any presiding judge, retired in charge of an officer of the court, and counsel for the respective parties and others in attendance dispersed without any formal adjournment of court.

"And thereafter upon the following morning, viz., Saturday, July 1, A. D. 1905, at 10 o'clock A. M., the court was opened, his Honor, Judge John L. Healy presiding, and thereupon then and there the jury returned the following verdict:

"'We, the jury, find the defendant, Pennsylvania Company, guilty, and assess the plaintiff's damages at the sum of ($30,000) thirty thousand dollars, and find the defendant, The Pittsburg, Fort Wayne & Chicago Railway, not guilty.'"

GEORGE WILLARD, for appellant; A. N. WATERMAN and H. M. PIERCE, of counsel.

FRED W. BENTLEY, for appellee; DARROW, MASTERS & WILSON, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is first urged in behalf of appellant that the Su-

perior Court erred in admitting over objections improper evidence offered by appellee. It is complained that upon leading questions put to one of appellant's witnesses on cross-examination by appellee's attorneys, the claim of right was based to put questions to other witnesses which it is said were so leading that they put into the mouths of appellee's own witnesses the answers desired. Appellee's attorneys reply that there was no specific objection made at the time to the form of these questions put for the purpose of impeaching one of appellant's important witnesses, that there was no exception preserved to the ruling of the court, that leading questions may be properly allowed in the exercise of legitimate discretion by the trial court, and the impeaching questions were in the usual and proper form. We concur in the main in these contentions of appellee. It is true that it appears from the abstract prepared by appellant's attorneys and hence to be construed in case of controversy as correct so far as it is against their contentions, that general exceptions were preserved "to which ruling of the court" without making it clear what specific ruling is referred to. There are doubtless cases where it might be an abuse of the court's discretion when a witness is called to impeach a former witness by testifying that the latter in conversation had stated certain facts to be different from what he had testified they were at the trial, to allow the impeaching witness to be asked in the first instance whether the former witness had made certain definite statements, telling the impeaching witness what they were. It may be true that often, perhaps, it would be wiser and fairer to inquire generally what the former witness had said in the conversation referred to. Yet there are no doubt cases where it is proper that the impeaching witness should have his attention directed to the particular point as to which his testimony is desired. We are of the opinion that what is said in Starkie on Evidence, pp. 169, 170, is in point: "So

where a witness is called in order to contradict the testimony of a former witness who has stated that such and such expressions were used or such and such things were said it is the usual practice to ask whether those particular expressions were used, or those things were said, without putting the question in a general form by inquiring what was said. If this were not to be allowed it is obvious that much irrelevant and inadmissible matter would frequently be detailed by the witness;'' and ''where a witness is called to prove affirmatively what a witness on the other side has denied, as, for instance, to prove that on some former occasion that witness gave a different account of the transaction, a difficulty may frequently arise in proving affirmatively that the first witness did make such other statement without a direct question to that effect.''

It is further insisted that the verdict of the jury is one that reasonable and fair-minded men endeavoring to ascertain the truth could not have arrived at. We have given the evidence most careful consideration and are compelled to differ with appellant's attorneys upon this point. The testimony introduced in behalf of appellant, which, it is insisted, the jury disregarded, is to the effect that the team track upon which it is conceded appellee received his injuries, was full of cars from eight o'clock in the evening until between two and three o'clock in the morning, and it is argued that it was impossible that appellee could have been knocked down as he states by a moving car on 32nd street; that no car could have been moved on that track at that place at the time when appellee was injured. We are of opinion that the evidence of appellant's books tending to show that certain cars were on that track that night, and the testimony tending to show that the track was at some time that night full of cars, is not by any means conclusive in appellant's behalf, even if its truthfulness

be conceded. Appellant's theory that appellee was intoxicated and that in a state of inebriety he had gone a long distance from the street along this team track and had crawled under cars on the track and was run over in consequence when the cars came to be moved, is based in part upon appellee's statement that he had one bottle of beer while at supper at a restaurant at least an hour or two before the accident, and in part based upon the testimony of appellant's employes who were operating the cars by which he was run over. There is no satisfactory evidence of appellee's intoxication that we can discover, and his own story that he was dragged by the car by which he was hit some considerable distance, would account for the distance from 32nd street to the place where he was picked up, if the jury believed the testimony in his behalf. As to this distance, there is conflict in the testimony, placing it from seventy-five feet to several times that distance. No sufficient reason is shown other than the statements of some of appellant's witnesses why the jury should accept their version and reject appellee's. Indeed, we are of opinion the evidence preponderates against appellant as to the distance from 32nd street to the point where appellee was picked up. Conceding that the team track was at an earlier time that night full of cars, as appellant contends it was, yet if the cars on it or most of them were removed before the time of the accident, even but a very short time before, the conditions would in all probability have been such as appellee states they were when he says he was struck. There is a wide difference in the testimony even of appellant's witnesses as to the hour when the accident occurred. There is evidence also given by appellant's witnesses tending to show that the cars on the team track were in fact drawn out that night on to a main track; that the empties were sifted out and that the cars still to be unloaded were then ''kicked''

back on to this team track; that this was done several times, and that no one was riding on these detached cars thus sent rolling through the darkness down this team track and over streets that crossed it, without lights or signals of any kind. The track itself was outside of the gates presumably placed there to protect travelers from danger by reason of any passing cars, and presumably giving notice that such danger was passed when the traveler had gotten outside of and beyond them. Appellee testifies that when he first discovered the tracks, numerous at that street crossing which he was approaching, he saw a freight train moving north which looked to him to be upon the easterly of the tracks in question, and back of what he at first supposed to be two lines of freight cars, but afterwards discovered to be a fence. If he is correct in this it would tend to show that at that time cars which appellant claim were on the team track were then in the act of being hauled away for the purpose of sifting out those that were empty and returning those that were not. No claim is made that appellee was familiar with the conditions or knew of the location of this team track or its existence.

Without prolonging the discussion it is evident, we think, that to disturb the finding of the jury upon the questions of fact would be unwarranted.

It is said that the Superior Court erred in refusing to give an instruction requested by appellant. This instruction told the jury they had a right to take into consideration in passing upon the testimony "the fact that the plaintiff has an interest in the result" of the trial and a right to give to his testimony only such weight as they might think it was entitled to under the evidence. The practice of singling out the plaintiff's testimony in this way is not generally regarded with favor. Penn. Co. v. Versten, 140 Ill. 637, 642. The refusal was not erroneous. Especially is this true in the present case, since all that was meritorious in the refused instructions was in-

cluded in one that was given at appellant's request, but which instead of singling out the plaintiff as such, applied the instruction to "parties to the suit" and instructed that "the fact that such witnesses are interested in the result of the suit if it so appears from the evidence, may be taken into account by the jury."

We are told that the verdict is excessive. It is true that appellee, at the time of the accident a student of ingineering, was then earning only $60 a month and that he is now in his crippled condition able to earn the same sum. The purpose of the award of money compensation in cases of this kind is to make good, so far as money can do so, the loss and damage caused by the injury inflicted by reason of the defendant's negligence. There is evidence tending to show that the surgical and hospital attendance appellee received is reasonably worth over, two thousand dollars. His injuries seem to necessitate the services of a person to wait on him and render assistance in the performance of functions indispensable to the maintenance of life. His food must be specially prepared and served to him. This service, should his life be prolonged, cannot in all probability continue to be rendered indefinitely by the hands of affectionate kindred. It must be hired and paid for. The prevailing rates of interest upon a safe investment of $30,000, which rates are likely to diminish rather than increase, would not provide an over-liberal compensation for such services as will continue to be indispensable to appellee. While we recognize the duty incumbent upon us to scrutinize carefully the amounts of verdicts returned in cases of suits for personal injuries, we cannot be warranted in setting aside a verdict merely because the amount is large, where it is without reasonable doubt based upon sound legal principles. While compensation for the multiplied injuries received in consequence of

dangers resulting from the increased use of machinery and modern methods of transportation continues to be awarded only through wasteful methods of litigation, it will remain the duty of courts to carefully apply these principles to each case, in considering whether verdicts are or are not excessive. In the present case we are unable to regard the verdict and judgment as open to that objection.

It is strenuously urged that this judgment must be set aside because it is said that when the trial judge during the argument of counsel left the court room and went away to his home in an adjoining county, to enable him to keep an official appointment there, the court was dissolved and all proceedings thereafter had in the absence of any judge were a nullity, being *coram non judice*. The proceedings had in the absence of the trial judge were the conclusion of the final argument to the jury, the reading by the clerk of the instructions previously prepared by the judge, and the retirement of the jury to consider their verdict.

The bill of exceptions shows affirmatively over the signature and seal of the trial judge, that the respective counsel were asked by the court whether they would agree that the arguments might be concluded, the instructions marked "given" by the court, read to the jury by the clerk of court and the jury retire, all in the absence of the court, and that the jury be allowed to return a sealed verdict and separate, the verdict to be received next morning by another judge. It is certified that this was agreed to by the counsel for both sides. It appears from this certificate that no exception was taken to this procedure at the time and no objection was made to it until after appellant had filed its written motion for a new trial, in which no grounds were assigned based on claim of error because of the absence of the judge; nor was any such objection made until after that original motion

for a new trial had been argued though not finally disposed of by the court. Then, seventeen days later, pending such disposal, appellant without leave of court or notice, it is said, filed a paper assigning as additional grounds for a new trial the proceedings under consideration had in the absence of the trial judge from the court room.

Appellant's contention is that the judge could not delegate his power to the clerk of court nor any one else; that giving instructions is a judicial act, which only a judge can perform and which he cannot delegate even with consent of the parties to the suit, and that it is his duty to hear all of the arguments of counsel to the jury. Appellant's attorneys declare that the question presented by the record in this respect is whether the judge can abdicate his function, go away from the court room and delegate to the clerk the performance of his duties even with consent of the respective counsel. We concur in the view that judicial powers cannot be delegated by the judge, that he cannot act by deputy and that a trial must be had in a court such as prescribed by law. It is well settled also that jurisdiction cannot be conferred upon a court, much less upon an individual not a judge, by mere consent of parties. Stubbings v. City of Evanston, 156 Ill. 338. See also Hoagland v. Creed, 81 Ill. 506-507; Blair v. Reading, 99 Ill. 600; State ex rel. v. Noble, 118 Ind. 350. In the case before us the verdict was received by a judge properly authorized, and no question is raised as to the validity of his action. We agree with appellant's counsel that it is as much the duty of the trial judge to preside over the argument of a cause before a jury as it is to listen to the evidence. He should maintain entire control of the trial. Any other practice, with or without consent of counsel, is to be deprecated whether it is deemed reversible error under all circumstances or not. In the present case nothing appears which indi-

cates that either party was in fact prejudiced by the judge's absence at that particular time. The closing argument was concluded in a decorous manner without objection, criticism or dispute. It would be extremely technical to reverse this judgment because of the error of the trial judge in this respect, which, so far as the record indicates, was not in the least prejudicial to either party and for which neither was responsible, unless in giving their consent at the instance of and to oblige the court. Had anything occurred because of the absence of the judge during the argument to the jury, which was or might have been prejudicial, a different conclusion might have been inevitable; but as the case stands we must regard the error as merely technical, objection to which has been waived by the consent of the parties.

It is urged, however, that giving instructions to a jury is a judicial act which can be performed by no one but a judge, that this act cannot be delegated by him, and "is a power which parties can not by consent authorize him to bestow upon the clerk of the court;" that "instructions are not given to a jury until they are read or handed to it." It is important to bear in mind that the instructions read to the jury by the clerk were actually prepared and marked "given" as the statute requires, by the judge himself. They were the court's instructions. This is not disputed and is in effect conceded in appellant's motion for a new trial. in which it is recited that "the court erred in giving to the jury instructions asked," etc. The only delegated acts performed by the clerk of court were reading the instructions and handing them to the jury by direction of the judge. No one would probably question that if this had been done just as it was done, but in the presence instead of in the absence of the judge, the proceedings would have been unobjectionable. It may be said, and with much force, that to trust such matters to the clerk of court might give opportunity

for fraud or deception should there be officers of court dishonestly inclined or lacking in vigilance. In the present case, however, there is no question but that the instructions were accurately given as the court prepared them. As we have said, no right nor privilege was lost to appellant by the court's temporary absence, and appellant was in no way injuriously affected. Under the statute exceptions to giving or refusing instructions may be entered at any time before entry of judgment. Practice Act, chap. 110, R. S., sec. 54. When the jury having signed and sealed their verdict assembled the next morning before another judge sitting in the same court, counsel on both sides were present, and it was competent for them then, before the verdict was received, to raise all the objections which are now urged because of the absence of the judge when the instructions were read. No objection was made. The sealed verdict was opened and read without objection and the ordinary motion for a new trial was entered. In this state of facts, what is said in Sanitary District v. Cullerton, 147 Ill. 385-393, is in point: "We are of opinion that by not objecting when he had an opportunity to do so, the right was waived. * * * Appellant could not lie by with full knowledge of what was being done, ready to accept it if the verdict was favorable and insist upon it if the verdict should prove unfavorable." See also Hall v. O'Brien, 4 Scam. 406, where exception to the temporary absence of the trial judge was not taken until after verdict and the jury was discharged. Had the verdict in the present case been favorable to appellant it may safely be assumed that the latter's attorneys would have insisted strenuously that no error had been committed warranting a new trial.

Appellant urges that the error was one that could not be waived, that the presence of the judge is essential to the existence of the court, and that in his

absence there was no court. Granting that the session of court may be deemed suspended in the judge's absence, it does not necessarily follow that the proceedings in controversy were a nullity. In Macnamara on Nullities and Irregularities in Law, p. 20, it is said that "an irregularity is a formal but a nullity is a substantial defect. * * * One applies chiefly to the manner, the other to the matter or merits of the proceeding; the former is voidable, the latter absolutely void;" and it is said that "it may be laid down as a certain rule that whenever there is any doubt upon the matter it will always be safer to treat the defect as an irregularity rather than as a nullity," that "an irregularity may be waived." We are of opinion that the error complained of was an irregularity, not a nullity, and that it could be and was waived by the conduct of appellants. There are cases in other jurisdictions in which the temporary absence of a judge during the trial of a cause has been considered an irregularity which could be waived. Bedal v. Spurr, 33 Minn. 207-208; Baxter v. Ray, 62 Iowa, 336-339; Western Union Tel. Co. v. Lewelling, 58 Ind. 367-373; Horne v. Rogers (Georgia Sup. Ct.), 49 L. R. A. 176-181; Crook v. Hamlin, 24 N. Y. Suppl. 543. In Horne v. Rogers, *supra,* it is said (p. 180): "In order for such absence to become reversible error it must appear not only that objection was made to the judge's failure to suspend the trial, but that the absence of the judge resulted in some harm to the losing party."

There is a supplemental bill of exceptions containing affidavits from which it appears there was a misunderstanding between appellant's counsel and the court as to what they were consenting to when the court asked them to agree to his absence from the conclusion of the trial. This emphasizes in our opinion the very strong objection which may well be urged to procedure such as that under consideration. We

are constrained to hold that the presiding judge should in no case absent himself from the court room during the progress of a trial, without suspending the proceedings; that to do so is error, which, though as in the case at bar it may sometimes be waived, may readily afford ground nevertheless for setting aside the proceedings and compel a new trial.

For the reasons indicated, however, the judgment of the Superior Court will be affirmed.

*Affirmed.*