## PROTEST OF ST. LOUIS-S. F. RY. CO.

No. 22044. Opinion Filed May 12, 1931.

E. T. Miller and Cruce & Franklin, for protestant.

H. C. Crandall, Co. Atty., for protestee.

McNEILL, J. This matter comes to this court to review a judgment, or decision, of the Court of Tax Review of the state of Oklahoma, rendered upon the 19th of December, 1930, upon the second, third, fourth, and fifth causes of action in the matter of the protest of St. Louis-San Franscisco Railway Company, a corporation, against illegal and excessive tax levies for the fiscal year beginning July 1, 1930, and ending June 30, 1931, by the county excise board of Woods county, Okla. Each cause of action pertains to a different township with the same allegations, except as to the levy. The St. Louis-San Francisco Railway Company will be referred to as protestant, and the county excise board of Woods county, as protestee.

The second cause of action is as follows:

"Petitioner alleges that a levy of 1.12 mills has been made against the property of said

St. Louis-San Francisco Railway Company, for said year 1930, for the benefit of Belle township, in said county, for its road drag fund; and taxes to the extent of a large amount have been assessed against the property of said railway company on account of said levy.

"Petitioner further alleges that said levy, and the appropriation for which it is made, for road drag purposes, is wholly unauthorized, illegal and void, for the following reason, to wit:

"That under the provisions of section 10203 C. O. S. 1921, it is required that at every February meeting of the township board of the township, or as soon thereafter as possible, said township board shall select from its township road system the roads to be dragged for one year, and shall employ a superintendent of the township road system, who shall have entire supervision over the dragging and repair work on said roads, and shall make all contracts for dragging, and no bill for dragging or maintenance, or other work on said township road drag funds, until and unless itemized bills therefor have been certified by said township road superintendent.

"Petitioner further alleges that the said township above described has not complied in any particular with the requirements of section 10203; has not appointed any township superintendent; and has not designated, or had designated for him, the dragable roads of its entire township road system, for the said year 1930; and that by reason thereof, no power or jurisdiction has been vested in the excise board to approve any appropriation, or make any levy for road drag purposes for said township; the requirements of said section 10203, C. O. S. 1921, being a jurisdictional prerequisite to the power of the township board, or the county excise board to make any appropriation or levy for the purpose of dragging any of the roads of such township.

"Petitioner further alleges that by reason of the foregoing acts, said levy was and is illegal, excessive and void to the extent of said 1.12 mills, and prays that the same be annulled, set aside and corrected according to law, and as hereinafter more particularly set forth."

The same allegations are set forth in the third, fourth, and fifth causes of action, respectively, except for the name of the township and the amount of the levy.

The following is the agreed statement of facts and evidence:

"Mr. Cruce: Upon the second to fifth causes of action, inclusive, it is agreed that they are all involved in one test question and if the complaint is right, it is entitled to a reduction in the amounts as follows, as to the various funds, to wit:

"Second cause of action, Belle township, for road drag fund, 1.12 mills;

"Third cause of action, Valley township, for road drag fund .12 mill;

"Fourth cause of action, Liberty township, for road drag fund 1.053 mills;

"Fifth cause of action, Avard township, for road drag fund, 1.976 mills.

"It is agreed in this case that the townships in Woods county, Okla., are still operating under a township government.

"Mr. D. P. McNally, called as a witness in behalf of the protestant, having been first duly sworn, testified as follows:

"Direct examination.

"By Mr. Cruce: Q. What is your name? A. S. P. McNally. Q. What position do you hold in Woods county, Mr. McNally? A. County Commissioner of the third district. * * * Mr. Crandall: We will agree for the purpose of the records that the townships have not complied with that section (10203) so far as the law requires the meeting at the time designated in February in the electing of a superintendent. That wasn't done. There is no question about that. Mr. Cruce: Will you agree that there have been no written minutes designating the dragable roads? Mr. Crandall: Yes, sir; that is a fact. Q. (By Mr. Cruce) Then, Mr. McNally, with that, will you state to the court what, in your knowledge, what information you have acquired, that led you to believe what the townships have done in that respect? Judge Melton: In what respect? Q. Toward designating the roads. The county attorney agreed they have no written minutes. A. Can I tell? Q. Tell what you know. A. In my own language? Q. Yes, sir; that is what I want. A. In our county townships—I have been county commissioner practically twelve years—we have been loaning the townships county equipment to get their roads graded, smoothed up ready to drag, and as fast as they get that, they add these roads, and in some townships, they drag each section road after each rain, and I know that they do that. I don't know whether they are doing it legally, and in one township, Valley township, they have got every section line, not to standard grade and drain, but to little culverts, and they drag them after each rain, and that is what they are doing, using this fund for that purpose. That is all I know. Mr. Cruce: Do you want to ask something more? Mr. Crandall: No, you go ahead. Mr. Cruce: That is all of the proof. (Witness excused.) Mr. Cruce: It is agreed for the purpose of this record that they haven't had any minutes, no written minutes. (Argument and discussion off the record.) Judge Melton: The protest is denied. Mr. Cruce: Exception."

The Court of Tax Review denied the protest and made a finding to the following effect:

"The court finds that the protest should not be sustained, for the reason that the requirement of section 10203, C. O. S. 1921, for the designation of a road superintendent and dragable roads for one year, by the township boards, was not a mandatory or jurisdictional requirement or prerequisite to the authority of the county excise board to authorize, on the request of said township boards, a levy for road drag purposes, under section 10203; and for this reason, the protest being based upon the same principle of law in each of said causes of action, each and every one of said protests, on the second to fifth causes of action, inclusive, should be denied."

Exception was taken to this judgment, notice of appeal was duly filed, and the case is regularly before this court to review the action of the Court of Tax Review.

Five separate assignments of error have been made, but the sole question for determination is one of law, involving the proper application and effect of section 10203, C. O. S. 1921, which is as follows:

"Section 10. At every February meeting, or as soon thereafter as possible, the township board of each township shall select from its township road system the roads to be dragged for one year, to be known as dragable roads, and shall employ a superintendent of the township road system, who shall give bond for the faithful performance of his duties in such sum as said board may direct. Said superintendent shall have general supervision of all dragging and repair work on the township road system. * * * He shall have charge of all dragable roads of the township road system and shall make contracts for dragging and shall see that all dragable roads of the township road system are properly dragged at such times as are necessary to maintain such roads in a smooth condition, at such price as is reasonable and necessary to secure such contract. For this purpose there shall be expended, under the direction of the township board, through the road superintendent, upon the township road system not more than two (2) mill drag tax hereby authorized to be levied. * * *"

A discussion of the fourth and fifth assignments of error will suffice for a determination of the issues involved herein. In the fourth assignment of error the protestant contends that no attempt had been made to comply with the requirements of section 10203, supra, before the levies complained of in each of said causes of action were made for the benefit of the townships named therein for road drag purposes, and that such failure to comply therewith deprived the county excise board of any jurisdiction to authorize the levy for such road drag purposes for the townships named in each of said causes of action; that is, no attempt had been made in designating the dragable roads and appointing the township road superintendent in said district before the levies complained of were made.

In the fifth assignment of error protestant raises the same ground as in the fourth assignment of error, and further contends that a compliance with the requirements of the aforesaid section 10203 is a jurisdictional prerequisite to the right or power of the county excise board to authorize any levy for road drag purposes for said townships; and that such failure to comply with the provisions of aforesaid section invalidated the levies attempted to be made for such road drag purposes for each of aforesaid townships.

Confining the issue presented by protestant within a small compass, the question is whether or not the requirements of section 10203, supra, in the designation of dragable roads and the employing of a superintendent of the township road system, are jurisdictional, prerequisite, and mandatory to the right of the county excise board to levy, or spend the money provided for in the road drag tax of two mills, for road drag purposes. On the other hand, protestee, Woods county, contends that said requirements are not mandatory, but directory; that if said requirements are mandatory, the same concerns the right to collect on the tax levies, and are not mandatory or prerequisite as to the right to levy such road tax.

In reference to the provisions of the statute as to whether the same are mandatory or directory, our court in the case of Enid v. Champlin Refining Co., 112 Okla. 168, 240 Pac. 604, states:

"The intention of the Legislature is the cardinal consideration in the construction of statutes; and whether a particular provision is mandatory or directory, is to be determined from the language used and the purpose in view."

Sutherland on Statutory Construction, page 575, announces the rule as follows:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the substantial purposes of the statute.

"Provisions regulating the duties of public

officers and specifying the time for their performance are, in that regard, generally directory. Though a statute directs a thing to be done at a particular time, it does not necessarily follow that it may not be done afterwards. In other words, as the cases universally hold, a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory, unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered as a limitation of the power of the officer."

2 Cooley on Taxation (4th Ed.) sections 510-511, regarding directory and mandatory provisions, states:

"Provisions of this character are not usually regarded as mandatory unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than that designated.

"A clause, in a statute is directory where it contains mere matter of direction, and is not followed by words of positive prohibition."

In the case of Bunten v. Rock Springs Grazing Ass'n, the Supreme Court of Wyoming, 215 Pac. 244, in an action brought against the county treasurer and members of the State Board of Equalization seeking to enjoin the collection of certain taxes, etc., the court, in discussing the irregularity, illegality, mandatory and directory requirements, states:

"As heretofore stated it is not always easy to draw the line between an action that is irregular and one that is illegal. Generally speaking, an irregularity is a formal, but an illegality is a substantial, defect. The latter goes to the foundations and discovers that the proceedings have nothing to stand upon, while the former denotes that the officer, tribunal or court were acting within their jurisdiction, but failed to consummate their work in all respects according to the required forms. Illegality applies to matters which are contrary to law, irregularity to matters which are contrary to the practice authorized by law. One relates more to the act, the other to the manner of it; and courts are inclined, in case of doubt, to treat defects in proceedings as irregularities rather than as illegalities. Bank v. Rich, 81 Me. 164, 16 Atl. 506; Wilson v. Simmons, 89 Me. 242, 36 Atl. 380; Pennsylvania Co. v. Barton, 130 Ill. App. 573; State v. Norton, 69 S. C. 454, 48 S. E. 464; Barton v. Saunders, 16 Ore. 51, 16 Pac. 921, 8 Am. St. Rep. 261. In matters of taxation this subject has frequently, or generally, been discussed under the topic as to whether a statutory direction is mandatory or directory. When the requirements are intended for the protection of the citizen and to prevent a sacrifice of his property and a disregard thereof might and generally would affect him injuriously they are considered as mandatory. But many statutory requisitions are intended as a guide for officers in the conduct of business devolved upon them, and are designed to secure order, system, and dispatch in proceedings. A disregard of them cannot injuriously affect the rights of parties interested, and hence they are generally considered as directory, and a noncompliance therewith does not render the tax illegal or void. Cooley on Tax'n, 480; State v. Phillips, 137 Mo. 259, 38 S. W. 931; State v. West Duluth Land Co., 75 Minn. 456, 78 N. W. 115; Willard v. Pike, 59 Vt. 202, 210, 9 Atl. 907; Tallon v. Mining Co,, 59 Colo. 316, 149 Pac. 108; Prairie Oil & Gas Co. v. Cruce, 45 Okla. 774, 147 Pac. 152."

Our court in the case of School District No. 61, Payne County, v. Consolidated District No. 2, Coyle, Logan County, 110 Okla. 263, 237 Pac. 1110, in the first syllabus states as follows:

"In general, statutory provisions directing the mode of proceeding by public officers and intended to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties cannot be injuriously affected, are not regarded as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. 25 R. C. L. p. 769, sec. 16."

In the opinion, the court cites with approval the case of People v. Cook, 14 Barb. (N. Y.) 259, as follows:

"Statutes directing the mode of proceeding by public officer to do a thing within a certain time without any negative words restraining him from doing it afterwards, the naming the time will be regarded as directory, merely, and not as a limitation of his authority.

"This rule has been very steadfastly adhered to by the courts, in all cases where certain acts are directed to be done, by public officers, within a stated time, and in a particular manner, when those acts are of a public character, and concerning the public interest or when the rights of third persons are concerned."

The aforesaid section 10203, O. O. S. 1921, is a part of chapter 30 of the Session Laws of 1916, relating to the construction of roads and bridges and the expenditure of money therefor. It received an early interpretation by this court in the case of Lusk v. Eminhiser, 53 Okla. 785, 158 Pac. 915:

"* * * The office of Commissioner of Highways was created to have supervision of all matters relating to state roads and highways. To facilitate the co-operation of the

state and its minor governmental agencies in this work, the act provides for the division of all roads and highways into state, county, and township road systems. * * * The drag tax is an additional involuntary tax placed by the state upon one of its instrumentalities, which alone might more than exhaust the maximum levy allowed by section 7376, supra (9692, C. O. S. 1921), for ordinary township purposes."

In the case of Grubb v. Smiley, 142 Okla. 19, 285 Pac. 38, the court said:

"Section 9698, C. O. S. 1921, provides for the meeting of the excise board, the procedure thereof, and for the making of appropriations. * * * There is no other provision in our statute as to the method to be used in the making of appropriations."

Subsection c of section 9698, which has reference to township appropriations, provides that:

"The appropriations for townships shall be so itemized as to show in separate items the amount of funds appropriated; for salary and compensation of officers; for office supplies, blank books, stationery, and printing, for compensation of supervisors, and for road work; for building bridges, culverts, and purchase of right of way; for tools and equipment; for such other expenditures as may be necessary and authorized by law; but not herein enumerated."

The phrase "for such other expenditures as may be necessary and authorized by law" includes the levy of 2 mills for road drag purposes as authorized by law under section 10203. The said levy of 2 mills in the instant case was authorized by law and approved under the head of "dragging funds." It was properly appropriated, and it was not necessary that it be itemized further in accordance with section C of section 9698. This was decided by this court in Re Protest of Chicago, R. I. & P. Ry. Co., 146 Okla. 23, 294 Pac. 169, syllabus No. 1 being as follows:

"The drag fund for a township is a single item. It may be used for drag purposes only, and no itemization is necessary."

In the body of the opinion the court states:

"There is nothing in the legislative enactments that requires the drag fund to be itemized. That fund is to be used for the purposes enumerated in section 10203, C. O. S. 1921, and for no other purpose."

Counsel for appellant cite the case of Nelson, Sheriff, v. Oklahoma City and Western R. R., 24 Okla. 617, 104 Pac. 42, and Grubb v. Smiley, 142 Okla. 19, 285 Pac. 38, to support their contention that the provisions under section 10203 are mandatory and must be complied with before a levy can be made for the township road drag fund. An examination of these cases shows they are clearly distinguishable from the case under consideration.

In the Nelson Case, supra, suit was instituted against the sheriff of Greer county to restrain him from collecting a certain township tax assessed against plaintiff on the ground that the levy of said tax was illegal and void, for the reason that the board of directors of the interested township did not make out an account of the money necessary to defray the township expenses of said township, and did not cause such an account to be signed by the president, attested and filed with the county clerk of said county on or before the first day of the session of the board of county commissioners at which the assessment for county purposes was made; and that the board of directors did not at any time file such an account and certificate with the county clerk of said county as required by section 6685, Wilson's Revised and Annotated Statutes of Oklahoma, 1903.

In this case the section of the statute under consideration was section 6685, supra, which provided, in part, as follows:

"The township board of directors shall make out an account of the amount of money necessary to defray the township expenses during the next ensuing year; said account shall be made out not more than 60 nor less than 20 days prior to the meeting of the commissioners at which the assessment for county purposes is made. Said account shall be signed by the president of the board and attested and filed with the clerk of the county on or before the first day of said session of the county commissioners, who shall cause the same to be placed upon the tax books of said township. * * *"

Under this section of the statute the township board of directors was required to make out an account of the amount of money necessary to defray the township expenses during the next ensuing year. In this case it was revealed the levy was made on the information received by the county clerk by telephone, on the 17th day of September, 1906, the day the board was in session. However, the certificate of the township levy was not filed in the office of the county clerk until the 2nd of February, 1907, and was not signed by the president of the board or attested as required by law. The court states:

"A substantial compliance with the requirements of the foregoing section was absolutely necessary before the machinery for levying and collecting township taxes could legally be set in motion, and properly sub-

jected to such tax. The county board, in the absence of any information as to the amount of money required to be raised by such levy, as is required by law, would be without authority or jurisdiction to proceed with such levy. * * * We do not believe the executives and ministerial officers upon whom the law imposes the duty of levying and enforcing this tax have kept even remotely within the authority conferred upon them by law. * * * In the case at bar, the omission was not a mere irregularity, but there was an absolute and utter failure on the part of the township officers to comply with the requirements of the statute."

Under such a state of facts as shown by the record in that case there was hardly a feeble attempt to comply with the law. Such disregard for provision of said section amounted to more than a mere irregularity.

In the Grubbs v. Smiley Case, supra, the statute under consideration was section 9698, C. O. S. 1921, requiring that the county in levying for roads and bridges must itemize and designate the bridges to be constructed, and the cost of each. In place of this there was appropriated a lump sum. The court very properly held that the requiring of the itemizing of the bridges was a prerequisite and should be specifically complied with; but in this case we are dealing with a different section of the statute, to wit, 10203, pertaining only to the taxes of the township itself, in which certain duties or requirements are set out for the township's to comply with or for their direction. This section does not specify or require that at the time the budget of the township is presented to the excise board for their approval that they attach to, or file a copy of any minutes or proceedings showing a compliance with said section. The excise board had a right to rely upon the estimates as furnished by the township boards and to assume that the township boards had complied with all of the provisions of law required of them.

In the case of Bonaparte, County Treas., v. Nelson, 142 Okla. 54, 285 Pac. 100, the court states as follows:

"The excise boards, like municipal boards and other public officers, are presumed to discharge the duties which the law imposes upon them, and the same is true relative to the board of county commissioners and school district boards and other municipal bodies that are required by law to make financial statements and estimates of needs, and that are required to publish the same, and in the absence of proof it will be presumed that the officers, upon whom acts and duties are enjoined by law, performed those duties."

An examination of the cases cited by pro-

testant in their brief, covering various questions, brings us back to the provisions or requirements of aforesaid section, 10203, for the determination of the question at issue. We look to its subject-matter, its purpose and object, consider the importance of its provisions, and its relation to the other sections of our revenue law in determining whether or not the words used therein are in effect mandatory or directory—a question which has often vexed and troubled the courts.

A careful and fair analysis of section 10203 reveals that there is a total absence of any words of positive prohibition or negative words relative to the requirements therein.

A study of our tax laws shows numerous changes have been made by the Legislature from time to time in order that the public business may be transacted in an orderly manner. A survey of these changes is illuminating in endeavoring to arrive at the intent of the Legislature in reference to its enactments. No statute should receive such a strict construction, the consequences of which would be to weaken and destroy legislative revenue enactments designed as a means to carry on orderly governmental functions whenever its provisions properly protect the taxpayer from unjust discrimination in requiring each to bear a fair and equal proportion of the expenses of government in the general plan of taxation, especially when the levy does not exceed any statutory or constitutional limitation.

In the instant case there is no contention that the financial estimate of the township officers, in so far as it relates to a road drag tax levy, was not properly made out under the proper heading, separate and apart from the current or general funds, as clearly indicated by this court in the cases of Dickinson v. Blackwood, 76 Okla. 175, 184 Pac. 582, and Magnolia Petroleum Co. v. Sappington, 124 Okla. 16, 253 Pac. 483, showing the necessity for the road drag levy, or that such levy exceeded the statutory limitation of 2 mills, or that such estimate was not approved by the excise board as required by law. To constitute a valid levy for road drag purposes it is necessary for the township officers to make a financial estimate showing the necessity therefor in the same manner as an estimate for other purposes. Lusk v. Eminhiser, supra; C., R. I. & P. Ry. Co. v. Pourron, 118 Okla. 80, 246 Pac. 835. The court in the latter case, in speaking of the road drag tax, states as follows:

"The statute does not expressly point out the board which shall make the levy, or designate the machinery which shall be employed to cause the levy to be made and

·collected. As the statute is silent in this respect, the inference is that the same machinery should be employed in causing the levy to be made and collected, as applies to any other item of tax levied by the township. The further inference from the statute above quoted is that it is the duty of the township to make an estimate for the road drag tax, in the same manner as it makes an estimate for other expenses involved in the township government.

"We think it was the intention of the legislative body that the road drag tax, which the township is authorized to levy, should be levied and collected under the general provisions applicable to the levy and collection of all township taxes."

We conclude under the foregoing authorities that the requirements in the aforesaid section 10203 are clearly directory and not mandatory. The words, "At every February meeting or as soon thereafter as possible, the township board of each township shall select from its township road system the roads to be dragged for one year, to be known as 'dragable roads,' and shall employ 'a superintendent of the township road system," etc., are affirmative in their application and do not require these specific acts to be done at each February meeting, but permit the same to be within the discretion of the township board as to the time of its complying with the aforesaid provisions, and such provisions cannot be construed to be a limitation on the powers of the officers as stated in the Sutherland text, supra.

We conclude under the foregoing authorities that the requirements in the aforesaid section, 10203, are directory and not mandatory, in designating the dragable roads and appointment of a township superintendent before a levy can be made; and that such requirements are not prerequisite to the right of the excise board to appropriate the estimated funds for the township submitted in their budget. In view of the fact that said townships, as set forth in protestee's brief, have complied with the aforesaid provisions before any tax was sought to be collected, we find that there has been a substantial compliance with the requirements of aforesaid section.

The judgment of the Court of Tax Review is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. RILEY, J., absent.