## BUNTEN v. ROCK SPRINGS GRAZING ASSOCIATION
(No. 1075; Decided May 8, 1923; 215 Pac. 244)

Pleading—Taxation—Injunction Against Tax—State Board of Equalization—Valuation of Property for Taxation—County Assessors—County Board of Equalization—Equalization of Property for Taxation—Irregular Tax Assessments—Excessive Valuation of Property for Taxation—Uniform Valuation of Property for Taxation—Evidence—Judicial Notice—Constructive Fraud—Presumptions—"Illegality" and "Irregularity" With Respect to Tax Defined—Notice.

1.   The general rule, that a tax will not be enjoined for illegality except where there also exists, some one of the recognized grounds of equitable jurisdiction, has been so modified by Sec. 6302 C. S. 1920, that an averment of facts showing the illegality of the tax is sufficient to warrant equitable relief.

2.   In actions to restrain the assessment, levy, or collection of taxes, or to recover back such taxes or assessments as have been collected, on grounds of illegality under Section 6302 C. S. 1920, it must be alleged and proven that the tax is in fact illegal and not merely irregular.

3.   While Comp. St. 1920 Section 2769, contemplates valuation of taxable property at its true value, value is matter of opinion, and acts of valuing officers are judicial, and the collection of a tax will not be enjoined on the sole ground that the assessment is excessive.

4.   Demurrer to a petition for injunction alleging that land assessel by State Board of Equalization at $2.00 an acre was worth only 90 cents an acre, admits only, that plaintiffs honestly believe it to be worth only 90 cents an acre, or, perhaps, that common opinion is to that effect, there being no such thing as absolute value.

5. The State Board of Equalization was created, at least partially, for the purpose of equalizing the valuations of all property in the state for the purpose of taxation, and with its judgment, when honestly exercised, courts cannot interfere.

6. The presumption is that the State Board of Equalization did its duty and acted legally in increasing valuations, and exercised its honest judgment as to value.

7. A taxpayer is entitled to the honest judgment of assessors and boards of equalization in fixing values, and they may not act in an arbitrary, capricious, and fraudulent manner, but will be restrained by the courts from becoming despotic.

8. Any error committed by a county board of equalization in raising the valuation of land from 90 cents to $1.00 an acre was cured by the action of the State Board of Equalization in raising it to $2.00 an acre, as it was immaterial what valuation was previously fixed.

9. In a suit for injunction, allegations, that the county board of equalization, under coercion from the State Board, raised the valuation of land from 90 cents to $2.00 an acre, and, on protest, reduced it to $1.00 an acre, cannot aid allegations of fraud on the part of the State Board in again increasing the valuation.

10. In an action to enjoin the collection of taxes on the ground of illegality, an allegation that the State Board of Equalization acted ''arbitrarily and without any evidence as to the valuation of said lands,'' is, on demurrer insufficient to charge fraud, being a mere conclusion of the pleader.

11. The State Board of Equalization in the equalization of property valuations in the various counties of the state, acts upon the returns of assessment made in such counties and upon information gained by official annual visits, to each of the counties as directed by statute, and is not required to act upon evidence produced before them, nor to attempt to equalize the value of property as between holders in a county, such duty being left to the assessor and county boards of equalization.

12. In a suit for injunction, allegations that the State Board of Equalization in increasing the valuation of a class of land acted without any evidence as to value, is not equivalent to an allegation that it acted without knowledge.

13. It is presumed that the State Board of Equalization is composed of men of intelligence and fair judgment in the absence of a showing to the contrary, and that in performing their duties under Comp. St. 1920, Section 2810, they obtain a fair idea of taxable values in the state.

14. Where the State Board of Equalization ordered an increase in valuation of all grazing lands in a county, and a petition for injunction does not allege that it authorized any modification, it must be assumed that an attempted telephonic modification to make it apply only to plaintiff's land was unauthorized and void.

15. Increase in valuation of plaintiff's grazing land under an order of the State Board of Equalization was not in itself a discrimination, where it did not appear that other grazing lands were not increased, or that an attempted modification of the order to exclude them was carried out.

16. A taxpayer has a right to have all taxable property assessed uniformly, and departure from a uniform rate, if made in an illegal manner where his property is assessed at full value, is a discrimination, and not only a fraud against him, but a violation of Const. Art. 15 Sect. 11.

17. Where assessors or boards of equalization are shown to be guilty of intentional and systematic discrimination, in the assessment of property for taxation, such conduct is fraudulent and renders the excessive assessment and tax illegal, and authorizes relief by injunction. But, a mere mistake, or accidental discrimination, does not authorize an injunction.

18. In an action to enjoin the collection of taxes, wherein it was alleged that an increase of valuation ordered by the State Board of Equalization, exceeded the valuation fixed thereon by local tax officials, but not alleged that such increase of valuation was in excess of valuations placed upon property of the same, or a similar class in other counties, *held* insufficient as a showing of constructive fraud to invalidate the tax.

19. In suit for injunction, where it is not alleged that a telephonic communication from some one in the office of State Board of Equalization, attempting to modify an order increasing valuations by excluding part of lands affected, was made, received, or carried out with intent to discriminate against plaintiff, and there is no allegation from which it might be inferred that the discrimination, if made, was illegal, it cannot be presumed so.

20. An assessment is not fraudulent merely because it is excessive, but a grossly inequitable and palpably excessive valuation may be constructively fraudulent, as showing in itself an intentional injustice or discrimination.

21. The State Board of Equalization, being vested with authority to increase or decrease aggregate valuations, or of a class, or classes of property in a county in equalizing valuations as between different counties in the state, is not required to give notice to individual taxpayers, even though one taxpayer should own all of the property of a given class within such county, since an order affecting all property of a given class irrespective of ownership, does not call for notice to the owner as an individual taxpayer.

22. Though grazing lands in Sweetwater county were only admitted to be worth 90 cents an acre and were valued by the county board of equalization at $1.00 an acre, an increase by the State Board of Equalization to $2.00 an acre *held* not fraudulent, in view of a higher assessment of grazing lands in adjoining counties.

23. It is unnecessary for the State Board of Equalization in directing the county board of equalization to increase valuations of a class of lands to refer to any statutory authority, and an error in such a reference was immaterial.

24. The statutory requirement that property be valued for purposes of taxation at its actual value is merely a means to an end, and secondary to the constitutional requirement that all taxable property shall be assessed uniformly.

25. Under rules as to judicial notice, the court, in determining whether an increase of valuation by the State Board of Equalization was constructively fraudulent, may examine reports of the tax commissioner and State Board of Equalization as printed at public expense and showing assessed valuation of similar lands in other counties.

26. The court takes judicial notice that Green River is the county seat of Sweetwater county.

27. A telegram from the State Board of Equalization addressed to the county board of equalization at Green River, Wyo., and stating that valuations of grazing lands in the addressee's county were increased, sufficiently indicated that it was lands in Sweetwater county the valuation of which was increased.

28. Under Comp. St. 1920, Section 2810, though the county board of equalization has finally adjourned before receiv-

ing an order of State Board of Equalization for an increase of valuations, it is its duty to reconvene, if necessary, to render the order effective, and it can be compelled to do so by mandamus.

29. Under Comp. St. 1920, Sections 1515, 2792-2795, and 2810, it must be presumed that when a county assessment roll is laid before the State Board of Equalization, valuations of various owners have been fully equalized as between themselves.

30. The duty of the county board of equalization to order an increase of valuation of a class of property made by the State Board of Equalization, is merely ministerial and the requirement of Comp. St. 1920, Section 2810, that it shall take necessary action to make the State Board's action effective is directory, and the making of the increase by the assessor without order of the county board, is only an irregularity not warranting injunction.

31. As respects injunction, ''illegality'' in assessment of tax is a substantial defect contrary to law and leaving the proceeding with nothing to stand on, while an ''irregularity'' is a formal defect contrary only to the practice authorized by law, and relating rather to the manner of doing the act than to the act itself.

32. Where the State Board of Equalization ordered an increase in the valuation of all grazing lands in a county, a petition for injunction not showing that an attempted telephonic modification was carried out, and alleging that, as modified, the increase applied to lands owned by plaintiff, its stockholders, and others, did not show the increase was confined to an individual assessment, so as to require notice under Comp. St. 1920, Section 2810.

33. In the absence of allegations or proof to the contrary, it cannot be presumed that the State Board of Equalization violated the law, and it must be presumed that an increase of valuations made without notice was one lawfully permitted under Comp. St. 1920, Section 2810, and not an increase of individual assessment.

ERROR to District Court, Sweetwater County; JOHN R. ARNOLD, Judge.

Action by the Rock Springs Grazing Association in behalf of itself and others having a common interest, against Mathew Bunten, as County Treasurer and ex-officio Tax Collector of the County of Sweetwater and others to enjoin the

collection of certain taxes levied upon its lands for the year 1919.   Judgment for plaintiff on demurrer, and defendants bring error.

*W. L. Walls,* Atty. Gen., *D. G. Thomas,* County and Pros. Atty., and *W. E. Mullen,* for plaintiff in error.

The ultimate question is the sufficiency of the petition to support the decree of injunction rendered after the overruling of defendant's demurrer.   The petition in substance alleges that the tax authorities of Sweetwater County proceeded in accordance with law, in the assessment and equalization of the property of that county; that the County Board of Equalization adjourned August 2, 1919, *sine die,* and was powerless to carry out orders of the State Board of Equalization, increasing or decreasing property valuations for taxes in that county after said date; that the State Board ordered an increase in the value of grazing lands which was spread upon the tax roll by the county assessor without authority from the county board; that the state board ordered said raise without evidence of valuations; that the raise ordered by the state board was in excess of the value of the land; that plaintiff paid all taxes legally levied against its lands for the year 1919 in said county; that said raise was illegal; that the county treasurer was threatening to sell plaintiff's lands for taxes; and that the tax assessed and levied upon plaintiff's lands was false and fraudulent; that plaintiff's lands did not exceed in value over $1.00 per acre.   No facts are alleged showing fraud, actual or constructive, and the demurrer does not admit statements of bare legal conclusions.   (Ricketts v. Crewdson, 13 Wyo. 298.)   An increase, or decrease of valuations may be ordered by the state board, and applied by the county board without notice to individual property owners.   (Hammond v. Winder (Ohio) 126 N. E. 409; People v. Pitcher, (Colo.) 138 Pac. 509; By-Metallic Inv. Co. v. State Board. (U. S.) 60 L. Ed. 372; 239 U. S. 444.)

The petition does not allege that the State Board of Equalization violated or neglected to perform its duties as prescribed by the constitution, or laws of the state; on the contrary the acts of the state board which are complained of, are shown to be in accordance with the constitution and laws of the state; (Const. Art. 16, Sect. 10, Art. II, Sect. 1, Sec. 2810, (C. S.) Equalization of property valuations for taxation has been provided for, since the organization of the territory, and upon the admission of the state, the constitution provided for a continuation and development of the policy, (R. S. 1887, Sec. 3804; Const. Art. 16, Sec. 9; 2356 C. S. 1910; L. 1911 Ch. 6, Sec. 1; L. 1915 Ch. 119; L. 1917 Ch. 105; L. 1919 Ch. 135; Const. Art. 16, Sec. 10; 2800-2818 C. S. 1920.) Injunctions will not issue against tax collections unless the tax be void, (6302 C. S. 1920;) the statute was adopted from Ohio, and was so construed in that state. (Stevens v. Daniel, 27 O. St. 527; Grosbeck v. Cinti., 51 O. St. 365; R. R. Co. v. Wagner, 43 O. St. 75, and followed in this state; Horton v. Driskell, 13 Wyo. 66; Ricketts v. Crewdson, 13 Wyo. 298; Crewdson v. Nefsy, 14 Wyo. 61;) mere over assessment will not be enjoined; Wyoming cases supra; (People v. Pitcher, (Colo.) 138 Pac. 509; St. Brd. v. Metallic Inv. Co., 138 Pac. 110; People v. Pitcher, (Colo.) 156 Pac. 812; Metallic Inv. Co. v. Brd. (U. S.) 60, L. Ed. 372; Company v. Santa Fe, 52 (Colo.) 609; 125 Pac. 528; Bank v. Patterson (Colo.) 176 Pac. 501; U. P. R. R. v. Weld Co., 247 (U. S.) 282, 62 L. Ed. 1110.) Only fraud or gross abuse of discretion will warrant interference by the courts. (State v. Brd. (Mont.) 186 Pac. 699.) Assessments merely irregular will not be enjoined. (Brd. v. Bulland (Kans.) 94 Pac. 129; 16 L. R. A. N. S. 807,) and cases in note; orders of a State Board of Equalization are not subject to collateral attack. (St. v. Bank (Mo.) 213 S. W. 815;) nor reviewable by courts unless fraudulent, void or illegal, (Atty. Gen. v. Sanilac Supr's. 42 Mich. 72; 3 N. W. 260; Fuller v. Supr's. 185 N. W. 157; Cooley Taxation 785;) state board may equalize property in counties, by in-

creasing or decreasing valuations, (37 Cyc. 277; Terr. v. Co. 9 Ariz. 405; 84 Pac. 519; Copper Qn. Min. Co. v. Brd. 206 (U. S.) 474; 51 L. Ed. 1143; State Brd. v. Taylor, (Miss.) 83 So. 810; St. ex rel. v. Harris, 227 S. W. 818;) the motion to vacate injunction is in effect a special demurrer, (10 Ency. P. P. 1047;) it is presumed that public officers have performed their legal duties, (22 R. C. L. 472;) standards of valuation submitted by county authorities in assessment returns, are the lawful evidence upon which state equalizations are made, and are binding on the state board; the fact that no notice is required to be given to individual taxpayers of an increase or decrease of property in the aggregate, or of a class, does not render the statute unconstitutional. (Hammond v. Windner, (Ohio) 126 N. E. 409.) The state board acquires jurisdiction by virtue of the assessment returns by counties. (Mayor v. Davenport, 92 N. Y. 604;) orders of the state board are not subject to collateral attack, (People v. Pitcher, supra; Stanley v. Supr's. 121 (U. S.) 550; Mayor v. Davenport, supra; Cooley Taxation, supra;) the jurisdiction of the state board is independent of the county authorities, (Des Moines v. Saverude, 180 N. W. 193, State ex rel. v. Vaile, 122 Mo. 33; 26 S. W. 672.) The statute prescribing the duties of the state board in equalizing property in the several counties is valid. (St. v. Hackman, (Mo.) 217, S. W. 271;) the provision requiring county boards to effectuate orders of the state board is mandatory. (Hammond v. Windner, supra.) The petition does not state facts sufficient to constitute a cause of action, the judgment below should be reversed.

*T. S. Taliaferro, Jr.,* and *M. E. Wilson,* for defendants in error.

The amended petition took the place of the original; (1 Bates P. P. 562,) pleadings shall be liberally construed, (5686 C. S.) the demurrer admits all traversable allegations of the petition. (Roberson v. Company, 171 N. Y. 538;

64 N. E. 442; Hance v. Hair, 25 O. St. 349; 1 Bates P. P. 425.) The Colorado decisions cited by plaintiffs in error are not in point, when the facts involved are considered; the value of the land is alleged to be 90 cents an acre; this allegation is admitted by the demurrer. The petition alleges facts showing constructive fraud; over assessment constitutes fraud if arbitrary and coercive. (N. P. R. R. v. Co. 144 Pac. 1; 26 Ida. 455; Gammill Lbr. Co. v. Supr's, 274 Fed. 630.) The increase in the present case was exorbitant and unreasonable, and therefore fraudulent. (N. Pac. Co. v. Co., supra; Manson v. Heston, 83 Iowa 377; 49 N. W. 985.) The notice from the state board was indefinite and uncertain, and never reached the county board, for the reason that it had adjourned after its July meeting. The injury was caused by the unauthorized act of the county assessor. The county board never acted. An increase of one hundred per cent in valuation is not an equalization, but on the contrary creates an inequality. (Manson v. Heston, supra,) it shows arbitrary discrimination. (Spokane v. Co., 143 Pac. 307; Raymond v. Traction Co., 207 U. S. 20; 52 L. Ed. 78; Gammill Lbr. Co. v. Super's, supra; Green v. R. R. Co., 244 U. S. 499.) The tax injunction statute, (6302 C. S.) goes farther than the ordinary rule of equity. (C. B. & Q. Co. v. Brd., 39 Pac. 1039; 54 Kans. 781; Citizens Bank v. Brd., 111 Pac. 496; Finney v. Bullard, 16 L. R. A. (NS) 807;) Horton v. Driscoll is not applicable in the present case on the facts.

The tax involved in Ricketts v. Crewdson, 13 Wyo. 298, were held not illegal, and therefore not subject to injunction, but that case differs from the one at bar, and the same may be said of Crewdson v. Nefsy Co. cited by plaintiff in error. The state board has no authority to direct the assessor of Sweetwater County to raise the value of the property involved; the raise was arbitrary and unreasonable, and therefore fraudulent. (People ex rel. v. Bridge Co., 125 N. E. 280; People v. Stuckart, 121 N. E. 629; Fester v. Bosson, 128 N. E. 145; Gas Co. v. Mayor, 101 Md.

541; 61 Atl. 532;) this is not a collateral attack, but an action for relief under a statute. The County Board of Equalization having adjourned, had no knowledge of the telegram sent by the State Board of Equalization. The question here is one between a taxpayer and taxing officers. An increase of one hundred per cent in the valuation of property above its actual value, shows bad faith. Joint assignment of error must be good as to all persons as signing them, or they are not good as to any. (3 C. J. Sec. 1501; 2 Ency. P. P. 933; Greenawalt v. Impr. Co., 16 Wyo. 226;) in Oden v. Sinton, 234 S. W. 1090, the tax was assessed by an unauthorized person, and held to be void, here we have an assessor applying an increase of valuation without authority, (see also, St. v. Wheatley, 74 So. 427;) the term *actual value* as used in tax laws, means true, genuine, absolute, or real value. (Birmingham Fire Ins. Co. v. Pulver, 126 (Ill.) 337;) the remedy afforded by Sec. 2846 C. S. for the refunding of taxes erroneously paid, and which has been argued by counsel for plaintiff in error, in no way limits the remedy rendered by Sec. 6302 C. S.; it has no application here, since it might if followed, necessitate action by county board, which in effect would be a reversal of the state board, a result not contemplated by the legislature. We believe the tax to be illegal, and that the judgment below should be sustained.

BLUME, Justice.

Rock Springs Grazing Association, a corporation, as plaintiff, brought this action against the county treasurer of Sweetwater County and the members of the State Board of Equalization, as defendants, seeking to enjoin the collection of certain taxes, and alleging in their amended petition in substance, leaving out minor matters, as follows:

That plaintiff is the owner and in possession of certain real estate in Sweetwater County, (here the lands, embracing over a million acres, are specifically described;) that the actual value of the land does not exceed 90 cents per

acre; that prior to July, 1919, said lands had been assessed at a maximum valuation of 70 cents per acre; that at the first legal meeting of the county board of equalization in June, 1919, said board proceeded to equalize the property in said county and to fix the value of the lands of plaintiff at $1.00 per acre; that at the second meeting of said board in July, 1919, said board of equalization increased the valuation of said land from $1.00 per acre to $2.00 per acre; that plaintiff thereafter appeared before the said board and filed an affidavit, and as a result thereof said county board of equalization reduced the valuation of said lands from $2.00 to $1.00 per acre; that on the second day of August, 1919, the said county board of equalization adjourned *sine die* and has not since that time reconvened or held any meeting for any purpose whatsoever; that on or about August 28th, 1919, the assessor of Sweetwater County, acting as clerk of said board, received a communication purporting to come from the State Board of Equalization, which communication is in words and figures as follows:

"Cheyenne, Wyoming, August 28th, 1919.
Hon. County Board of Equalization,
    Green River, Wyoming.
Gentlemen:

You will hereby take notice that pursuant to Section 1 of Section 11, Chapter 134, Wyoming Compiled Statutes for 1910, the State Board of Equalization of the State of Wyoming hereby increases the value of all grazing lands in your county 100%.

Acknowledgement of this communication will be appreciated.
                        Yours truly,
                            State Board of Equalization,
                                By C. L. Draper, Chairman."

That thereupon on August 28, 1919, the assessor of Sweetwater County, received a telephonic communication from someone at the office of said State Board of Equalization,

stating that the communication from said state board did not mean that all of the grazing lands in the county of Sweetwater should be raised 100%, but ''only the grazing lands within the Railroad Land Grant within said county, and owned, leased and controlled by this plaintiff, its stockholders and other interested persons.'' That thereupon said county assessor arbitrarily, and without any notice to plaintiff and said interested parties and without any order from the county board of equalization, and without any knowledge of said board, placed said lands on the assessment rolls at $2.00 an acre; that the action of the State Board of Equalization ''in attempting to raise the valuation of said lands from one dollar to two dollars an acre was arbitrarily done, without any evidence as to the value of said lands, and without any evidence whatsoever by which said state board could equalize the value of lands within the Union Pacific Railroad Land Grant, or lands entirely outside of said Land Grant;'' that said raise was against the protest of the said county board and against the protest of the said assessor and his deputies; that plaintiff has paid all legal taxes and offers to pay all taxes lawfully and legally assessed against plaintiff's land; that the county treasurer threatens to place upon the tax rolls an illegal tax based upon the illegal value of $2.00 per acre aforesaid, and that such action will create a cloud on the title of plaintiff to said lands; that plaintiff has no adequate remedy at law. A temporary and permanent injunction against the increased taxes resulting as aforesaid is asked and that the raise in the valuation of said lands mentioned as aforesaid be reversed and set aside. The defendants filed a demurrer to said amended petition on the ground that the same failed to state a cause of action. The court overruled the demurrer, and the defendants electing to stand thereon, judgment was entered for the plaintiff as prayed. The action is here on petition in error of defendants below, and the only question involved is as to whether or not the amended petition states facts sufficient to constitute a cause of action.

1. In most jurisdictions the illegality of a tax will not alone constitute a sufficient ground for an injunction against it, unless there exists at the same time one of the distinctly recognized grounds of equitable jurisdiction. (Cooley on Taxation, (3rd Ed.) 1411.) This rule is not in force to its full extent in Wyoming where it is provided by Section 6302, Wyo. C. S. 1920 as follows:

"District courts have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof, but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected."

This section was adopted from Ohio, and under its provision a plaintiff need not aver and show, in addition to the illegality of the tax, facts bringing the case under some acknowledged head of equity jurisdiction. It is sufficient if he only avers and shows facts that the tax is illegal. (Horton v. Driscoll, 13 Wyo. 66, 76; Board v. Searight, 3 Wyo. 776, 798; Steese v. Oviatt, 24 O. S. 248; Stephen v. Daniels, 27 O. S. 536; Tone v. Columbus, 39 O. S. 302.) A similar statute was adopted in Kansas (Sec. 7163, St. 1915,) and some of the courts have accepted a like rule independent of statute. (Cooley, supra, 1418.) However, to meet the requirements under the statute, it is not sufficient to aver and show that the tax is merely irregular, but the facts must show that the tax is in fact illegal. (Tone v. Columbus, supra.) This rule of law is clear, but its application is another matter. It is quite difficult at times to draw the line between a tax, or an assessment—the foundation of the tax—which is merely irregular and one that is illegal, and the courts have not been altogether harmonious in their holdings. To give a few illustrations, assessments have been held illegal in whole or in part in the following cases: Where it was made by one not even a de facto officer; (Odem v. School Dist. (Tex. Com. App.) 234 S. W. 1090;) where property exempt from, or otherwise not subject to, taxation is in-

cluded in the assessment; (Singer Sewing Machine Co. v. Cooper, 263 Fed. 994; Schlosser Bros. v. Huff (Ind. App.) 128 N. E. 858; Northwestern L. Co. v. Chehalis Co., 24 Wash. 626, 64 Pac. 787; State v. Ry. Co. (Ark.) 212 S. W. 317;) where the statutory notice has not been given: (Linder v. Watson, 151 Ga. 455, 107 S. E. 62;) where property attempted to be assessed is not in existence; as a stock of merchandise reduced to a few remainders. (Silverfield v. County, 97 Or. 483, 192 Pac. 413;) where money, on the value of which no difference of opinion can exist, was assessed for more than par; (Barbour v. Goodloe, 13 Ky. Ap. 233. See, however, Hacker v. Howe, 72 Neb. 385.) Other illustrations will be mentioned later.

The laws in this state contemplate the valuation of all taxable property at its true value in money at private sale. (Sec. 2769, Wyo. Comp. St. 1920 and other sections.) Strictly and logically speaking, therefore, property that is assessed at more than its actual value might well be said to be assessed illegally as to the excess. But value is a matter of opinion; men disagree on what property is worth; there is no definite point where we can say that an excess valuation begins. Where the law imposes the duty of valuing property for taxation upon a particular officer or tribunal, their acts are judicial in their nature, an action in injunction is a collateral attack thereon, and hence it is the universally accepted rule, or substantially so, that in the absence of fraudulent conduct on the part of the assessment or equalization officers, courts will not enjoin the collection of a tax where the only complaint is that it is based upon an excessive assessment. (High, supra, Sec. 490a; 26 R. C. L. 460, 461; Ricketts v. Crewdson, 13 Wyo. 284, 299; Board of Co. Comm'rs. v. Searight Cattle Co., 3 Wyo. 777; Crewdson v. Nefsy Co., 14 Wyo. 61, 67.) It is the contention of the defendant in error, however, that the case at bar does not come within this rule, for the reason that, while the assessment was for two dollars per acre, the petition alleges that the value of the land is only ninety cents per acre, and that

this is admitted by the demurrer filed to the amended petition. That is true; but that allegation does not stand alone. It also appears from the amended petition that the State Board of Equalization, whose judgment, exercised within the sphere of its power, must prevail over that of the county board of equalization, valued the land at two dollars per acre, pursuant to which the assessment in question was made. The presumption is that the board did its duty; that it acted legally; that when it fixed the value it exercised its honest judgment. (In Re Oklahoma G. & E. Co. (Okla.) 171 Pac. 26; People v. Orvis, 301 Ill. 350, 133 N. E. 787.) Hence we have a case here where on the one hand it stands admitted that the value of the land is only ninety cents per acre, while on the other hand there is a presumption that the board in its honest judgment considered the land worth two dollars per acre. The statement that the land is worth only ninety cents per acre cannot be understood in an absolute sense. There is no such thing as absolute value. A stone cannot be other than a stone, but one man may give a different valuation to a piece of land than another. Hence all that the admission that the land is worth only ninety cents per acre can mean, is that the defendant in error honestly believes its value to be no higher, supported, perhaps, by the common opinion of men possessing knowledge, or, perhaps, fortified by an honest effort to sell, with a result that no more than that amount could be obtained. The presumption is, as stated, that the State Board of Equalization honestly believed this opinion wrong. In its ultimate analysis, therefore, we have here, presumptively, an honest difference of opinion, and in such case, unless the allegations in the amended petition negative this state of facts, the general rule above stated applies, and the judgment of the board, honestly exercised, must, under the decisions of all the courts, prevail. It is a familiar principle of law that courts will not control the discretion of officers. To make assessments, to fix valuations for taxation, is primarily a function for administrative officers,

and not one for the courts. In the very nature of things, it would be impracticable to leave these matters to the latter. The laws have created the offices of assessor and boards of equalization. The duty of fixing values of property for taxation purposes is left to them. No authority is given to the courts of this state to do this for them. The matter is one of jurisdiction, of power, and in the absence of legislative provision to the contrary, courts cannot substitute their judgment for that of the persons and boards specifically provided for that purpose by the legislative department of our government, and no relief can be given by them in such cases in the absence of fraud, which invokes the principles of equity. Nor should this rule, announced by substantially all the courts of the land, be considered as a remarkable departure from any known principles. Many things, deemed unjust by a large or small proportion of the population, are done by, and happen under, other departments of our government, but are beyond the control of the courts. The judicial department has jurisdiction over acts that are illegally done, but to extend its power over acts done in good faith, pursuant to the exercise of an honest judgment, and within the jurisdiction of the person or persons performing them, would be, in the absence of legislative authorization, judicial usurpation inconsistent with the fundamental constitutional principle of division of power. Exact justice in matters of taxation is not possible, nor is it likely that entire concurrence in what constitutes such justice will ever be obtained. Valuation being largely a matter of opinion, it is not at all certain that courts are better judges thereof than administrative officers, and when the legislative department has delegated the discretion of determining values to the latter, and has not made provision for review by the courts, as it has not in this state, then all that can be expected by the tax payer is the exercise of honest judgment in good faith, and if a wrong results, it is not, as has been held, in contemplation of law a legal wrong, such as can, in the absence of legislative authority, be remedied by the courts.

In Pingree Nat. Bank v. Weber County, 54 Utah 599, 183 Pac. 334, the court held that proof as to the value of the property is absolutely immaterial in the absence of evidence tending to show fraud, and an allegation of value in the pleadings would no doubt be treated likewise. To the same effect is Pittsburg etc. Ry. Co. v. Bachus, 154 U. S. 421, 14 Sup. Ct. 1114. In the case of Hazard v. O'Bannon, 38 Fed. 220, it was claimed that the taxpayer's property was overvalued for the purpose of taxation both when considered by itself and in comparison with other like property, and an injunction was sought under the Missouri statute giving that remedy ''to prevent the doing of any legal wrong whatever.'' The court said:

''The obvious answer to this contention * * * is that the bill does not disclose that any 'legal wrong' has been done to complainant, unless it appears that the board of equalization acted illegally or fraudulently in the matter of assessing his property. If the board acted in good faith, and in conformity with law, no legal wrong was done or will be done, even though complainant's property was overvalued.''

In the case of People's Gas Light & Coke Co. v. Stuckart, 286 Ill. 164, 121 N. E. 629, the court said:

''We have often held that no difference in judgment as to the value of property, however gross, between the state board of equalization and the court can be sufficient to impeach the valuation of the board, but to have such effect the assessment must have been fraudulently made.''

In the case of Los Angeles Gas & Electric Co. v. Los Angeles, 162 Cal. 164, 121 Pac. 384, 9 A. L. R. 1277, the court said:

''It is not disputed that the conclusion of assessing officers as to the value of property for purposes of taxation, when honestly arrived at, and when not made in pursuance of some fixed rule or general system, the result of which is necessarily discriminatory and inequitable, is conclusive on

the courts, however erroneous the conclusion of those officers may be.    *    *    *    This is the universal rule."

In the case of State v. State Board, 56 Mont. 413, 186 Pac. 697, the court said:

"The board did review the action of the county assessors, and whether it arrived at a correct or an erroneous conclusion as to the value placed on the properties by the assessors is a matter with which the court cannot interfere. The determination of the value of property for the purpose of assessment is referred to the sound judgment of the assessing officers, subject to review only by the boards of equalization. For the manner in which these officers exercise their judgment they are accountable to the people who elect them, and the burden of their responsibility cannot be imposed upon the courts."

In the case of Sioux Falls Savings Bank v. Minnehaha County, 29 S. D. 146, 135 N. W. 689, Ann. Cas. 1914 D. p. 910, the court said:

"The statutory officers and boards form a tribunal whose decisions are final except where they act without jurisdiction or when they are guilty of what constitutes fraud in fact or in law. Courts cannot give aid in such cases unless specially authorized by statute to do so."

In the case of Town v. City of Mineral Point, 173 Wis. 355, 181 N. W. 224, the court said:

"When the taxing authorities act within their jurisdiction and exercise their judgment in the manner prescribed by statute, their determination is final and conclusive and their action may not be reviewed, except in a manner prescribed by statute. Mere irregularities or errors of judgment afford no basis for invoking the exercise of judicial power."

In the case of Finne County v. Bullard, 77 Kans. 349, 94 Pac. 129, 16 L. R. A. N. S. 807, the court said:

"Since the statute gives no right of appeal from the board of equalization, its opinion and judgment as to valuation are plenary and it is not within the power of the courts

to interfere with a tax merely because the assessment is excessive or unequal.''

(See also cases collated in note 16 L. R. A. N. S. 807 and Ann. Cas. 1912 B. 872; Symes v. Graves, 65 Kans. 628, 70 Pac. 591, 594; Continental Nat. Bank v. Naylor, 54 Utah 49, 179 Pac. 67; Sanford v. Roberts (Ky.) 236 S. W. 571; Ben v. Slaymaker, 93 Kan. 64, 143 Pac. 503.) Many more cases could be cited, but it is impracticable to do so here. The soundness of the doctrine as so held will appear clearly upon a moment's reflection. Equalization is but one of the steps in the assessment. (Ray v. Armstrong, 140 Ky. 800, 818.) The State Board of Equalization was created at least partially for the purpose of equalizing the valuations of all property in the state for the purpose of taxation. It is too well known to need much comment that the legislature had in mind the fact, when it enacted legislation in 1919 giving certain power to that board, that property in the various counties had not been assessed upon an equal and uniform basis. Local officers, desirous of protecting the tax payers in their respective counties from an undue proportion of the state tax, or giving them an advantage in that regard, had kept the valuations of property down, and this had resulted in some of the counties paying a larger share of the state tax than was proper. This evil was sought to be remedied, and hence the final judgment as to the valuation of property in the state was left to the state board of equaliza-ion. If the judgment of the local board of equalization is binding; if that judgment is not reviewable by the state board of equalization, then the whole purpose and intent of the law is frustrated. There should be some person, board, or tribunal, representing the state as a whole, and looking after the interests of all of its tax payers, and whose judgments should be final. The legislature vested that authority in the state board of equalization, and with its judgment, when honestly exercised, courts cannot interfere.

2. Of course, as has been indicated, assessors and boards of equalization must not alone act within statutory rules of

law, but they must also act in good faith. The tax payer is entitled to their honest judgment in fixing the value of property. They will not be permitted to do so in an arbitrary, capricious and fraudulent manner, and courts will restrain them from becoming despotic. This principle is as well settled as the principle last herein above mentioned, and counsel for defendant in error argue that this case is within it. To be so, the allegations in the amended petition must, as stated before, negative the presumption that the board exercised its honest judgment. To this we now turn our attention. The amended petition alleges that during the June meeting the county board of equalization of Sweetwater county arbitrarily and under coercion of the State Board of Equalization raised the valuation of the land in question to two dollars per acre; that a protest and affidavit was thereafter filed, which resulted in the reduction of the valuation to one dollar per acre. Apparently no complaint is made of that valuation as so finally fixed. The net result of the matter was favorable to the defendant in error, and of this, of course, it could not complain. Hence we fail to see the force of the argument in connection with this subject made in the brief of counsel. If, however, they complain of the raise from ninety cents to one dollar per acre by the county board of equalization, then such complaint must fail for another reason. The action of the county board of equalization was subject to the further action of the State Board of Equalization. That board fixed the value of the land in question at two dollars per acre, and it would be wholly immaterial, if that action was right, as to what valuation was previously fixed. Whatever error was committed before such final action was necessarily cured by such action of the state board. (See Los Angeles Gas & Electric Co. v. County, 162 Cal. 164, 121 Pac. 384, 9 A. L. R. 1277 and cases in note 9 A. L. R. p. 1284. State v. Pitcher, 61 Colo. 149, 173, 156 Pac. 812.) It follows, of course, that the allegations above mentioned can in no manner be used to prop up any allegations of fraud contained in the amended peti-

tion. The fraud to be relied on here must accordingly arise out of, or be connected with or be subsequent to the action of the State Board of Equalization. The allegations against that board directly are that it acted "arbitrarily and without any evidence as to the value of said lands." That these allegations are not sufficient to charge fraud has been settled by the case of Ricketts v. Crewdson, on rehearing, 13 Wyo. 284, 301, 302. The charge that the board acted arbitrarily is a mere conclusion of the pleader. It was not necessary for it to act upon evidence produced before it. If the board had acted without any *knowledge* whatever, the case might be different, (Doty Lumber Co. v. Lewis County, 60 Wash. 428, 111 Pac. 562) but such could not well be the contention here, despite apparent intimations in the brief that the term "without evidence" would be so inclusive. The State Board of Equalization is presumably composed of men of intelligence and fair judgment, and no charge to the contrary is contained in the amended petition. In forming their judgment as to the valuation, the members have before them the returns of the assessments made in the different counties of the state. (Sec. 2810, Comp. St. 1920.) Among other things, it is the duty of the board under the section of the statute mentioned to carefully examine into all cases of unequal assessments; to confer with, advise and give necessary instructions and directions to county assessors throughout the state, and to advise with and assist county boards of equalization in the performance of their duties, and generally to see that taxable property in the state is assessed at full value. One or more of the members of the board shall officially visit each county of the state annually, ascertain the methods of assessment and whether the laws have been complied with. It is reasonable to presume that the members of the board thus obtain a fair idea of taxable values in the state, and hence the legislature deemed it unnecessary that in their duties of equalizing values they should act upon evidence produced before them. In fact it is a well recognized rule that in the absence of a statutory

requirement, as in this state, to act upon evidence, boards of equalization act upon their own knowledge. (Cooley on Tax. 786 and cases cited; Ricketts v. Crewdson, supra.) What we have said applies also to the further allegations that the State Board of Equalization raised the assessment ''without any evidence whatsoever by which the said state board could equalize the value of lands within the Union Pacific Railroad's Land Grant or lands entirely outside of said Land Grant.'' Besides, these allegations seem to be entirely immaterial. It is not the function of the state board, at least in making equalization, to equalize the values of property among the holders thereof within a certain district in a county, such as, for instance, may be contained within the Union Pacific Railroad Land Grant. That duty is primarily left to the assessors and to the county board of equalization. Whatever equalization of that kind may result from increasing or decreasing classes of property, would be merely incidental to the main purpose sought to be accomplished by the legislature through the state board, namely, a uniform assessment of property in the various counties in the state.

3.   Much argument is devoted to the telephonic communication had between some one in the office of the State Board of Equalization and the assessor of Sweetwater County. It is alleged that the former stated to the latter that the order of the state board did not mean what it said and should not be construed to mean that all grazing lands in Sweetwater County should be raised, but only the lands within the railroad land grant, and plaintiff claims that an illegal discrimination against it resulted therefrom. There is no allegation that the State Board of Equalization authorized any modification of its order, and in the absence thereof, we must assume that the attempted modification was wholly unauthorized and void. It is alleged that the increase was made as to plaintiff's land, but that alone does not constitute a discrimination. It does not appear whether other grazing lands in the county, contemplated in the order made by the

state board, were increased or not. The amended petition is silent as to how and in what manner, other than as affecting the lands of plaintiff, the order was carried out, and for aught we know the order of the state board was carried out as made. Aside from that we must consider the subject from another standpoint. Section 11 of Article 15 of the Constitution provides that:

"All property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation, and the legislature shall prescribe such regulations as shall secure a just valuation of all property, real and personal."

Under this provision, plaintiff had the right to have all the taxable property in the county as well as in the state assessed at a uniform rate, and a departure therefrom if made in an illegal manner is, where its property is assessed at full value, a discrimination against it which would not only be a fraud against plaintiff but would also violate the constitutional provision of uniformity. Such discrimination may arise in various ways, for instance by the adoption of a wrong or illegal rule, principle or method, and an unjust tax resulting therefrom has frequently been enjoined as illegal. (26 R. C. L. 247, 461; Union Tank Line Co. v. Wright, 249 U. S. 275, 39 Sup. Ct. 276 and cases cited. Raymond v. Traction Co., 207 U. S. 20, 28 Sup. Ct. 15, 12 Ann. Cas. 757; Pingree Nat. Bank v. Weber County, 54 Utah, 599, 183 Pac. 334; State v. Harris, 286 Mo. 262, 227 S. W. 818.) In Samish Gun. Club v. Skagit County, 118 Wash. 578, 204 Pac. 181, the assessing officer included in his valuation and assessed the use to which land was put, and he was held to have proceeded upon a wrong theory, against which injunctive relief was granted. A similar case is Metropolitan Building Co. v. King County, 62 Wash. 409, 113 Pac. 1114. And, without attempting to analyze the rule closely, it appears to be universally recognized by all the authorities that where assessors or boards of equalization are guilty of intentional and systematic discrimination, and probably intentional discrimination alone, such conduct is fraudu-

lent and renders the excessive assessment and tax illegal, and authorizes a court of equity to interfere by injunction. (26 R. C. L. 247; High on Injunctions, Sec. 494; Lefferts v. Bank, 21 Wis. 688; Merrill v. Humphrey, 24 Mich. 170; First Nat. Bank v. Christensen, 39 Utah 568, 118 Pac. 778; City Ry. Co. v. Board, 283 Fed. 313. Cases collated in 3 A. L. R. 1370; Cooley on Tax. 1459.)

However, in determining as to whether or not an injunction should issue in case of a discrimination, it would seem that we should not lose sight of the tax payers in the state outside of the owners of grazing lands in Sweetwater County. Assuming that all the grazing lands in that county were justly increased in valuation, as the order of the State Board of Equalization purports to do, but that part of the owners thereof escaped their just proportion of taxes by reason of the telephonic communication mentioned, the latter fact alone would seem not to furnish an altogther convincing reason for relieving the plaintiff to the same extent, for we should then overlook the other tax payers and thereby still more discriminate not only against the other tax payers in Sweetwater County, but against all other tax payers in the whole state as well. (See First National Bank v. Holmes, 246 Ill. 362; 92 N. E. 893; Dunham v. City of Chicago, 55 Ill. 357.) We need not pursue this subject further or decide the point, but plainly not every discrimination should render an assessment or tax invalid, either in whole or in part. An excessive valuation constitutes, in a sense at least, a discrimination, and yet we have seen that this fact alone does not render a tax illegal. Besides officers are subject to error; mistakes are bound to occur, and the arms of government might be seriously crippled, if every discrimination, no matter how innocently or unintentionally arising, should be a sufficient cause for enjoining taxes. Recognizing this fact, it has been frequently held that omission to assess property, arising either from a mistake of law or fact, or accidentally, gives no ground to other tax payers to enjoin the tax assessed against them. (Weeks

v. City of Milwaukee, 10 Wis. 186; The B. & M. River R. R. Co. v. The Board, 10 Neb. 211; The People v. McCreary, 34 Cal. 432; Auditor General v. Sage L. & I. Co., 129 Mich. 182; 88 N. W. 458 and cases cited. Doty Lumber & S. Co. v. Lewis County, 60 Wash. 428; 111 Pac. 562; Ann. Cas. 1912 B 870 and cases in note.) And the principle applies equally to valuations made. A mere mistake, an accidental discrimination, does not authorize an injunction. As was said by the Supreme Court of the United States in First National Bank v. Albright, 208 U. S. 548, 28 Sup. Ct. 349:

"Accidental inequality is one thing; intentional and systematic discrimination another."

In the case of Sunday Lake Iron Co. v. Wakefield, Tp., 247 U. S. 350, 38 Sup. Ct. 495, the court said:

"And it must be regarded as settled that intentional, systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property. * * * It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practicable uniformity."

And in the case of Continental Nat. Bank v. Naylor, 141 Utah 49, 179 Pac. 67, 75, an action in injunction, the court said:

"Even if we could find that there was some apparent discrimination in point of fact by which appellant and other banks and their stockholders were required to pay something more than was required of tax payers on some other classes of property, still as we understand the authorities, appellant would have no standing in a court of equity to restrain the collection of the tax unless the discrimination resulted from wrong principles, methods or standards, wilfully and intentionally adopted. Discriminations resulting from mistake, inadvertence and miscalculations of error of judgment must be remedied in some other form of pro-

ceeding than the one adopted by appellant in the case at bar.''

In the case of Elgin v. Hessen, 282 Fed. 281, 286, the court said:

''To warrant the issuance of an injunction, complainants must show not only that their own property was assessed at a higher rate, but that the city real estate generally was undervalued; that such undervaluation was intentional, and that it was systematic, or pursuant to some scheme or rule.''

In the case of Citizens National Bank v. Board, 83 Kan. 376, 111 Pac. 496, the court said:

''Equity will grant no relief for errors and inequalities in assessments arising out of the accidental omission of property from the tax rolls.''

In the case of Lacey v. McCafferty, 215 Fed. 352, the court said:

''From these various provisions of applicatory law it is manifest that if complainant's property and other property of its kind was assessed for the purpose of taxation at a greater rate than the property of other corporations and individual citizens was assessed, it was in contravention of the constitutional and statutory law of the state and of the United States and of course was unlawful, but that fact in itself would not entitle complainant to resort to a court of equity to secure relief; it must further appear that the assessing officers made the erroneous valuation not accidentally or inadvertently with respect to a single piece or kind of property, but systematically and intentionally with respect to one or more classes of property with the intention of imposing upon that class of property an undue burden of taxation.''

See as supporting the principles herein mentioned Coulter v. R. R. Co., 196 U. S. 599, 25 Sup. Ct. 342, 49 L. Ed. 615; Chicago B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636; Judson on Tax. 333; Michigan R. Tax Cases, 138 Fed. 223, affirmed in 201 U. S. 245, 26

Sup. Ct. 459; Union Pac. R. C. v.Christensen, 275 Fed. 6, 9, and cases cited; Lion Coal Co. v. Bunten, 280 Fed. 887; Chicago & N. W. R. Co. v. State, 128 Wis. 553, 626. By examining the pleadings herein, we find no allegations that the telephonic communication mentioned was made, received or carried out with an intent to discriminate against the plaintiff, and no other allegations from which it might be inferred that the discrimination, if made, was such as to make it illegal. We cannot presume it to be so in the absence of such allegations.

4. We must go back once more to the allegation that the value of the land was worth only ninety cents per acre, and, in view of the increase to $2.00 per acre, determine the effect thereof under the principle of illegal discrimination which we have just discussed, or under the principles of fraud generally. An assessment is not fraudulent merely because it is excessive. (2 Cooley on Tax. 1459; People v. Dale, 286 Ill. 576, 122 N. E. 109; Board of County Commissioners v. Bullard, 77 Kan. 349, 94 Pac. 129, 16 L. R. R. N. S. 807; Iron Co. v. Tp. of Wakefield, 186 Mich. 626; Sanford v. Roberts, (Ky.) 236 S. W. 571.) But a grossly inequitable and palpably excessive valuation may be held constructively fraudulent, as showing, in itself, an intentional injustice or discrimination. (26 R. C. L. 461; Birch v. Orange County (Cal.) 200 Pac. 647 and cases cited. Metropolitan Bldg. Co. v. King Co., 62 Wash. 409, 113 Pac. 1114.) The question before us, therefore, is as to whether the increase of 100% made in this case is, in itself, constructively or *prima facie* fraudulent, and shows an intent to commit an act of injustice or discrimination. We do not have the illustration of many cases to guide us. In Grays Harbor Lumber Co. v. Grays Harbor Co. (Wash.) 211 Pac. 270, the court held that an increased assessment amounting to about 113% constituted constructive fraud, and that no allegations other than the value of the property and the increased assessment was necessary. In People v. Dale, supra, the assessment was increased 600%, and in view of the violation

by the board of one of its own rules, was set aside. In C. & N. W. R. Co. v. State, 128 Wis. 553, 625, it appears that the assessment of personal property was raised nearly 100% but injunction was refused. In the case of Tensas Delta Land Co. v. Ferguson, 128 La. 171, 54 So. 708, the court said:

"That the increase ordered by the Board of Equalization amounted to 101 per cent, is no indication of unfairness to plaintiff, but rather shows that plaintiff's previous assessment was unfair to other taxpayers."

It seems, therefore, that it is difficult to lay down a general rule as to when the point is reached when the courts would consider the claimed excessive assessment or increase by a board to be constructively fraudulent. It may be that we should distinguish between cases where individual assessments are increased in valuation from those where the increase is made of classes of property by percentage. Each case must evidently stand on its own facts. What, then, is the situation here? We find an increase in valuation of 100% over the value ultimately fixed by the county board of equalization, and an increase of over 120 per cent over and above the admitted value. The reference in the telegram to the county board of equalization for authority was doubtless intended as Section 11 of Chapter 135 of the Session Laws of 1919, but the error in this regard is immaterial, as it was unnecessary to refer to any statutory authority. Considered from the standpoint of percentage, the increase seems high. But considered from the standpoint of dollars, the increase of $1.00 or $1.10 per acre does not, in itself, necessarily convey any thought that such increase is fraudulent. Anyone at all familiar with topographical conditions of Wyoming knows, of course, that there is much land in the state which is of comparatively little value; some of it, in fact, might appear to be of no value at all. Still, it seems that the land in question has been classified as grazing land, both by local officials as well as the State Board of Equalization. While we need not go so far as the court did in

State v. Roche, Assessor (W. Va.) 113 S. E. 647, which held that it would take judicial knowledge of the fact that lands in one county were of the same general character as lands in another, still we think that in the absence of allegations or evidence to the contrary, we may assume that grazing lands in Sweetwater County bear a reasonable relation in value to grazing lands in other counties. That, after all, is of main importance here. The statute limits the valuation of property for purposes of taxation to its actual value. But the percentage of value at which property is assessed is, after all, secondary to the constitutional provision that all taxable property shall be assessed uniformly, so as to bear a just proportion of the burdens of taxes. The latter is the end, the former the means to that end, and we should not exalt the less important over the more important. It has been held that reports of tax commissioners and other public officers, printed under public authority, are judicially noticed. (23 C. J. 100.) So judicial notice has been taken of administrative regulations of considerable notoriety established by important state boards. (23 C. J. 99.) So, too, courts take judicial notice of matters of common knowledge pertaining to the levy, assessment, payment and collection of taxes. (23 C. J. 94.) That is also true in regard to the general history of the state. (23 C. J. 120.) The reports of the tax commissioner, an officer existing in this state from 1909 to 1919, and of the State Board of Equalization, have always been printed at public expense, and we think we are warranted in turning to these reports for the purpose of discovering what, if any, light may there be shed on the question before us. We find that the assessed valuation of grazing lands during 1910 to 1918 ranged as follows: (Lincoln County only from 1913 on.)

In Sweetwater County from $0.74 per acre to $2.23 per acre.

In Albany County from $1.89 per acre to $2.78 per acre.

In Carbon County from $1.81 per acre to $2.09 per acre.

In Uinta County from $1.85 per acre to $2.23 per acre.

In Lincoln County from $2.01 per acre to $4.13 per acre
Highest in State from $4.68 per acre to $5.51 per acre.
Average in State from $2.40 per acre to $3.05 per acre.

We need not assume that these figures are absolutely correct, but only as showing in a general way what has been, as a matter of history in this state, considered as a fair taxable value of grazing lands. It is clear that the valuation placed upon them in the counties adjoining, or neighboring on, Sweetwater County have for many years been placed higher than that placed on the same general class of lands in the latter county. It may be that they are in fact of much greater value, but we think that we cannot, in view of the foregoing facts, take the allegation in the amended petition as to the value of the land and the increase made in the assessment, standing alone, as showing *prima facie* a fraudulent valuation of the lands in question. The foregoing disposes of all of the allegations in the amended petition having any reference to fraud or discrimination, and from what we have said it appears that these allegations are not sufficient to show an illegal assessment by reason thereof.

5. The State Board of Equalization, as shown in the statement of facts, telegraphed its order to the County Board of Equalization at Green River of this state. The court takes judicial notice of the fact that Green River is the county seat of Sweetwater County, and the telegram sent could not be understood otherwise than that it was addressed to the board of equalization of that county, and that the grazing lands, the valuation of which was increased, were located in that county. Section 2810 of the Wyo. C. S. 1920 provides that in order that all taxable property in the state may be assessed at its true value, the state board may

"Add to or deduct from the aggregate valuation of the property, or of any class or classes of property, in any county or counties or in any district or subdivision, thereof, such per cent as will bring the same to its true value and place its assessed valuation upon a par with property of the same class throughout the state. When such assessed valuation

has been raised or lowered, the board shall give notice of the action taken, to the board of equalization of the county in which such property is situated, and upon receipt of such notice by such county board of equalization, the said county board of equalization shall take the necessary action to make effective the action taken by the State Board of Equalization.''

The notice aforesaid, sent by the State Board of Equalization, was received by the assessor, and he as secretary of the board duly made the required extensions on the assessment roll without any action whatever being taken, or order made, by said county board of equalization, but rather over its protest. It is the contention of counsel for defendant in error that such action on the part of the assessor was illegal and void, and that he could not have made such extensions without the order of the county board of equalization, in accordance with the terms of the provisions of the statute just quoted. The question, of course, is whether such proceeding constituted an irregularity or an act of illegality. If the former, an action in injunction will not lie; if the latter, such action will lie upon payment or offer of payment of the just amount of taxes due. It is, of course, true that the county board of equalization could have been compelled, in an action in mandamus, to act. (Taylor ex rel. v. Collins, (Miss.) 83 So. 810; Fayette County v. Wells (Ky.) 243 S. W. 4; Hammond v. Winder, 100 O. S. 433, 126 N. E. 409.) The fact that it finally adjourned after performing its labors in July would be immaterial. It is clearly contemplated by the provisions of the statute last quoted that the board shall re-convene if necessary, after the State Board of Equalization has acted, and a proceeding in mandamus would lie in order to compel the performance of this duty. (Fayette County v. Wells, supra; Arkadelphia Milling Co. v. Clark County Board (Ark.) 206 S. W. 70.) The fact, however, that the county board might be compelled to assemble and act does not alone dispose of the matter. If the board had any discretion in distributing the increase made

by the State Board of Equaliaztion; if instead of adding 100% to all the property coming within the class affected by the order of increase, it could distribute it over the property affected by a different percentage; if, in other words, it could also equalize, in addition to making an increase, then clearly the action of the county board was essential to the validity of any increase, and the extensions made by the county assessor without such order would be void. (See Murray v. Board (Colo.) 185 Pac. 262; Odem v. School Dist. (Tex. Civ. App.) 234 S. W. 1090.) The statute in this state makes no specific provision in such case, as is done for example by the statutes of Kentucky and Mississippi; and we must, therefore, attempt to arrive at the intention of the legislature by considering the general policy of the taxation laws of the state. The assessor starts out on the first Monday in February of each year to assess the property in the county. The property is listed by the owners, but the assessor fixes the valuation thereto. The property, together with its valuation, is by him entered upon the assessment roll which is returned by him to the county board of equalization on or before the fourth Monday of June in each year. (Sec. 1515 W. C. S. 1920.) On the latter date the said county board meets for the purpose of equalizing all the property in the county and is in session not to exceed 22 days. (Sec. 2792.) At that meeting said board shall add to said assessment roll any taxable property in the county omitted by the assessor, hear and determine complaints of owners as to the action of the assessor, and may increase, diminish or otherwise alter or correct any assessment or valuation contained in the assessment roll. (Sec. 2793.) Notice of any increase made is given to the parties affected, who may appear before the said board at its second meeting commencing on the fourth Monday in July of each year and continuing for not to exceed six days, and at said meeting the said board may make whatever ajustments are necessary in connection with the increase previously made. (Secs. 2792, 2794, 2795.) Individual assessments are per-

mitted to be increased or decreased by the State Board of Equalization upon due notice given, and from the action of the board an appeal lies to the courts. (Sec. 2810.) The right of taking such action by the latter board is evidently intended as a check on the action of local boards, so that all property in the state may be assessed at its actual value. But it is clear that the primary duty of assessing property at its just and full value, and to equalize the valuations of the property in the respective counties is on the assessors and county boards of equalization. Each tax payer has the right to appear before the proper county board and protest against any injustice done him, and the board must hear him and make whatever adjustments are necessary. We must, therefore, presume that when the assessment roll is laid before the State Board of Equalization, the various tax payers, owners of any class of lands in the county, stand on an equal footing and that the valuations of their respective properties have been fully equalized. (Carrico v. Crocker, 38 Okla. 440, 133 Pac. 181; Colorado Tax Commission v. Pitcher, 56 Colo. 343, 370, 138 Pac. 509; Bi-Metallic Inv. Co. v. State Board of Equalization, 239 U. S. 441, 36 Sup. Ct. 141.) Hence, when the State Board of Equalization adds to or deducts from the valuations of any particular class or classes of property a certain percentage, it would seem that all that is contemplated by the statute is that this percentage so added or deducted should, by the county board, be added or deducted from all of the property affected alike; in other words, that no second equalization by the county board is contemplated. This would seem to be the reasonable interpretation of the statute in the absence of specific legislation to the contrary. The assessment, therefore, becomes final upon the order made by the State Board of Equalization, except only as to omitted property, or as to changes in individual assessments made by this board and specifically provided for in the statute. All else becomes mere mathematical computation. The duty, therefore, of the county board to order the increase made by the state

board is merely ministerial. The assessor is the clerk of the county board of equalization, and hence it is proper that he should make the computations and extensions on the assessment roll. The case of Carrico v. Crocker, supra, while not exactly in point, is nevertheless instructive. The statute involved there directed that the State Board of Equalization should "order and direct the assessment rolls of any county in this state to be so corrected as to adjust and equalize the valuation of the real and personal property of the several counties in this state." The court said:

"After the State Board of Equalization has acted and equalized between the counties, it is then its duty to order and direct the assessment rolls in the counties in the state to be corrected as to conform to its action. The county clerk is the clerk of the board of equalization for the county. The assessment rolls are in his hands and custody, and on the return of the statement from the State Board of Equalization, showing its action and without any specific order thereof, it was his duty to so equalize the tax rolls as to make them conform to the valuation fixed by the board. All of the county and other levies are based upon the equalization as finally fixed by this board, and Section 7624 * * * provides for the adjournment of the board of county commissioners to await the statement of the state board, if it has not been received by the third Friday in July of each year. All of which shows that it is clearly the contemplation of the law that the county clerk should, on receipt of the statement from the State Board of Equalization, extend the same upon the tax rolls. The receipt of such official statement from the said board was tantamount to an order directing the assessment rolls of his county to be corrected to conform thereto."

Since, therefore, the duty above mentioned devolving on the county board of equalization was merely ministerial, should its failure to act be construed to be an illegality or merely an irregularity? As heretofore stated it is not always easy to draw the line between an action that is irreg-

ular and one that is illegal. Generally speaking, an irregularity is a formal, but an illegality is a substantial defect. The latter goes to the foundations and discovers that the proceedings have nothing to stand upon, while the former denotes that the officer, tribunal or court were acting within their jurisdiction, but failed to consummate their work in all respects according to the required forms. Illegality applies to matters which are contrary to law, irregularity to matters which are contrary to the practice authorized by law. One relates more to the act, the other to the manner of it, and courts are inclined, in case of doubt, to treat defects in proceedings as irregularities rather than as illegalities. (Bank v. Rich, 81 Me. 164, 16 Atl. 506; Wilson v. Simmons, 89 Me. 242, 36 Atl. 380; Pennsylvania Company v. Barton, 130 Ill. App. 573; State v. Norton, 69 S. C. 454, 48 S. E. 464; Barton v. Saunders, 16 Or. 51.) In matters of taxation this subject has frequently, or generally, been discussed under the topic as to whether a statutory direction is mandatory or directory. When the requirements are intended for the protection of the citizen, and to prevent a sacrifice of his property, and a disregard thereof might and generally would affect him injuriously, they are considered as mandatory. But many statutory requisitions are intended as a guide for officers in the conduct of business devolved upon them, and are designed to secure order, system and despatch in proceedings. A disregard of them cannot injuriously affect the rights of parties interested, and hence they are generally considered as directory, and a non-compliance therewith does not render the tax illegal or void. (Cooley on Tax., 480; State v. Phillips, 137 Mo. 259; State v. West Duluth Land Co., 75 Minn. 456; Willard v. Pike, 59 Vt. 202, 210; Tallon v. Mining Co., 59 Colo. 316, 149 Pac. 108; Prairie Oil & Gas Co. v. Cruce, 45 Okl. 774, 147 Pac. 152.) In High on Injunction, Sec. 489, the author says:

"It is held that where the ground of the complaint is only with reference to the manner of transferring and placing a tax upon the books * * * equity will not relieve by

injunction against the payment of taxes legally levied and justly due. * * * Nor does the fact that property subject to taxation has not been listed warrant interference by injunction.''

In the case of The S. C. & St. P. R. Co. v. The County of Osceola, 45 Iowa 168, it was held that it was not essential for the validity of a tax against railroad property that the assessment thereof should appear upon the regular assessment books. In that case the county board of commissioners declared the assessed value of the road lying within each city and township, transmitting a copy of the order to local authorities. The court said: ''This order, so transmitted, becomes the basis for the levy of taxes upon railroad property,'' just as in the case at bar the order of the State Board of Equalization becomes the basis, as to the property affected, of the tax levied thereon.

In The Carter & W. Gravel Road Co. v. Black, 32 Ind. 468, the syllabus reads:

''Injunction will not lie to restrain the collection of taxes or assessments on account of informality or irregularity in placing the same upon the duplicate, or in the conduct of the officers employed in their collection, where such taxes or assessments are authorized and directed by law.''

In the case of Union Trust Co. v. Weber, 96 Ill. 346, 357, the court said:

''It is so eminently just and equitable that every person or corporation receiving protection from the government should each contribute his or its fair and just proportion to its support, that a court of chancery should never interpose except to prevent great wrong and injustice. Mere technical objections, or even legal omissions, in assessing property or the collection of the tax, usually, do not affect in the slightest degree this strong equitable obligation. If many of the requirements of the law, even those that are important, should be omitted, still the strong equitable duty to pay a tax on property remains. When it escapes, the bur-

then is, unjustly and inequitably, imposed on others to the extent that property is relieved from its just burthen."

In the case of Dutton v. Citizens National Bank, 53 Kans. 440, 461, 36 Pac. 440, the court said:

"The cases * * * are cited in support of the proposition that the assessor had no right to change the assessment after it was made and returned * * * In reply to that, we may say that this is an action of injunction, in which the bank appears as plaintiff; and it can only be maintained for the purpose of restraining an illegal tax, no matter what the irregularity in the mode of assessment may have been."

We think that inasmuch as the duty mentioned was purely ministerial, it could not injuriously affect the defendants in error whether the purely mathematical calculations and entry on the books was made by one person rather than another, and whether with or without order of the county board, and hence the statute requiring the board to act was evidently intended to be directory and not mandatory. The order of the board could not make the tax just, nor would the lack thereof make it unjust. Should a court of equity then enjoin a tax, simply because of the lack of the order complained of? In Albany City Nat. Bank v. Maher, 6 Fed. 417, quoted in King County v. Northern Pac. Ry. Co., 196 Fed. 323, it was said:

"In dealing with the rights of parties to resist taxation, courts of equity proceed upon considerations quite unknown to courts of law, and hold, not only that it must appear the tax is one unlawfully imposed, but also one that justice and good conscience do not require the party to pay."

The lack of the county board to make the order mentioned in no way shows the tax to be one which "justice and good conscience do not require the party to pay." We think the omission was a mere irregularity, and as such must, under all of the authorities, be disregarded by a court of equity in an action in injunction. (37 Cyc. 987, 988, 1262. High, supra, Sec. 488; Horton v. Driscoll, 13 Wyo. 66, 74; Dutton v. The Citizens National Bank, supra.)

6.   The amended petition alleges that no notice was given to the defendants of the increase, and the contention seems to be made by counsel in their arguments that the increase here made is of an individual assessment. No notice is required to be given under Section 2810 where the aggregate valuation of the property in a county, or of a class or classes, is made, but a notice is necessary where the increase is made in an individual assessment. We do not see how the claim so made is tenable, under the pleadings in this case. The order of the State Board of Equalization set out in the petition states that all the grazing lands in Sweetwater County were raised in valuation. The fact, if it be a fact, that the plaintiff owned all the grazing lands in the county, could not in this case, where the land set out is over a million acres, acreage large enough to constitute a class, alone take away from the board the right to increase the valuation without notice by adding thereto a certain percentage. The telephonic communication made by some one in the office of the State Board of Equalization to the assessor of Sweetwater County, attempting a modification of the order actually made, could not alter that fact under the pleadings in this case, if for no other reason than that stated before, namely, that it does not appear whether or not the attempted modification was carried out. Moreover, the amended petition alleges that according to this telephonic modification this increase was to apply to grazing lands within the railroad land grant owned, leased and controlled by plaintiff "its stockholders and other interested persons." So it plainly appears from this allegation also that in no event was the increase confined to an individual assessment. In the absence of allegations or proof to the contrary the presumption is that the State Board of Equalization did its duty, and since an increase by that board, where it gives no notice, may not be made of the valuation of individual assessments, we cannot presume that the board violated the law, but must presume that the increase was made under

a state of facts under which such increase is lawfully permitted to be made.

It follows herein that the amended petition does not state facts sufficient to constitute a cause of action, and the judgment of the lower court is accordingly reversed and the cause remanded with directions to sustain the demurrer to the amended petition, and for such other proceedings herein as may be proper, not inconsistent with this opinion.

*Reversed and Remanded with Directions.*

POTTER, Ch. J., and KIMBALL, J., concur.